UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DANNY D. HESTDALEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:18-CV-39 JAR |
| ) | |
| CORIZON CORRECTIONS ) | |
| HEALTHCARE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff, a prisoner, seeks leave to proceed in forma pauperis in this civil action under 42 U.S.C. § 1983. Having reviewed plaintiff's financial information, the Court assesses a partial initial filing fee of $1.70, which is twenty percent of his average monthly deposit. *See* 28 U.S.C. § 1915(b). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint under 28 U.S.C. § 1915(e), the Court accepts the well-pled facts as true. Furthermore, the Court liberally construes the allegations.

## The Complaint

Plaintiff, an inmate at Moberly Correctional Center ("MCC"), was born with hereditary bilateral sensorineural hearing loss. Since childhood, plaintiff has required bilateral hearing aids and replacement batteries. He also requires special ear mold replacement tubes to use with the fitted ear piece on his hearing aids. These special ear mold replacement tubes need to be replaced every four to six months.

Prior to being transferred to MCC on February 9, 2016, plaintiff received the correct tubing for both hearing aids from Southeast Correctional Center ("SECC"). Since being at MCC, however, he has been denied the special ear mold replacement tubes. MCC offers only universal replacement tubes, which do not work with plaintiff's hearing aids. In addition, beginning in early January 2013, plaintiff's left ear began to "plug up as if [plaintiff] were rising rapidly in a plane or diving deep under water," a condition plaintiff calls "a negative vacuum." Plaintiff's left ear began continuously going into negative vacuum, rendering plaintiff completely deaf.

On March 15, 2016, plaintiff's right hearing aid stopped working; on May 13, 2016, his left hearing aid stopped working. Plaintiff went a month without working hearing aids. MCC then provided plaintiff a hearing aid for his right ear only. This hearing aid included universal hearing aid tubes, which do not work for plaintiff. Plaintiff sought two hearing aids, and the

special replacement tubes required for his fitted ear piece. Plaintiff has been told consistently by medical staff at MCC that Corizon policy only allows for only one hearing aid, not two, and will not allow for plaintiff's special replacement tubes.

Plaintiff's 87-page complaint details his frustrating and complex dealings with prison and medical staff at MCC in his attempt to obtain two hearing aids that work for his particular hearing loss. In short: Dr. Aguilera at MCC requested on three separate occasions that plaintiff be referred to an ENT specialist, and each request was denied. Dr. Aguilera then requested that plaintiff see an outside audiologist, and this audiologist referred plaintiff to an ENT. This referral by the outside audiologist finally resulted in the approval of plaintiff's request to see an ENT.

On May 4, 2018, plaintiff saw Dr. Thompson, an ENT who was to evaluate plaitniff's Eustachian tube dysfunction. Dr. Thompson examined plaintiff's ears, but because MCC had not forwarded to Dr. Thompson all the test results he needed, Dr. Thompson could not diagnose plaintiff's problem. Plaintiff was told he would have to reschedule the appointment after Dr. Thompson received the proper test results.[1]

On May 25, 2018, plaintiff was seen by Dr. Stamps at MCC who said the ENT report said that Dr. Thompson found nothing wrong other than that plaintiff needs two hearing aids. Dr. Stamps prescribed plaintiff allergy and decongestant medications, a treatment that has never worked for plaintiff's hearing loss.

Plaintiff states that his last tube replacement was on April 6, 2017. He is left with one hearing aid that is "nearly useless as the hardened tube distorts speech, making it even more

---

[1] Plaintiff states he was unable to understand what was said during this appointment, and had to rely on Officer Lester, who was in charge of plaintiff's transportation. Dr. Thompson's nurse relayed information to Officer Lester, who told plaintiff he would "explain it later."

difficult to understand." Plaintiff still suffers negative pressure in his left ear, vertigo, deafness, pain, and the recent onset of a humming noise and foreign pressure in the region of his left ear. His complaint seeks to compel MCC to provide him with an ENT specialist to treat his Eustachian tube dysfunction; to provide reasonable accommodations for his severe hearing impairment; to provide adequate and correct accessories for his hearing device; to remove all Corizon policies that violate the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"), and damages in excess of $2 million.

## Discussion

Liberally construed, the Court finds that plaintiff has stated a plausible claim under § 1983 for deliberate indifference to a serious medical need. Plaintiff's complaint seeks to sue twenty-five defendants, however, and includes allegations dating back to 2011. The Court finds that some of plaintiff's allegations are time barred, and that many of the named defendants were not personally involved in or directly responsible for the incidents that injured plaintiff. The Court will dismiss plaintiff's time barred allegations and any defendants not personally involved in or directly responsible for plaintiff's alleged constitutional deprivations.

### *Statute of Limitations*

Plaintiff's complaint includes allegations dating back to 2011. Section 1983 claims are analogous to personal injury claims and are subject to Missouri's five-year statute of limitations. *Sulik v. Taney County, Mo.*, 393 F.3d 765, 766-67 (8th Cir. 2005); Mo. Rev. Stat. § 516.120(4). Plaintiff filed this action on May 24, 2018, and therefore any allegations of conduct prior to May 24, 2013 are time barred.

*Deliberate Indifference to Serious Medical Needs*

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotations and citation omitted). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.

To state a claim for medical mistreatment, plaintiff must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Estelle*, 429 U.S. at 106; *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106. In order to show deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). In order to state a claim against Corizon, plaintiff must allege that there was a policy, custom or official action that caused an actionable injury. *Sanders v. Sears Roebuck & Co.*, 984 F.2d 972, 95-76 (8th Cir. 1993).

Here, plaintiff has stated an objectively serious medical need. He was born with a condition that causes bilateral hearing loss and requires hearing aids. Plaintiff has also stated plausible claims that some of the twenty-five named defendants actually knew of but deliberately disregarded those needs. The Court must assess this second prong—the subjective prong—on a defendant-by-defendant basis, however, because plaintiff's complaint is overly broad and includes several officials and medical personnel who were not personally involved or directly responsible for plaintiff's medical care and treatment.

*Corizon Corrections Healthcare and Its Employees*

"A corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies." *Crupley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). "The test is whether there exists a policy, custom or action by those who represent official policy which inflicts an injury actionable under § 1983." *Id.* at 590.

Plaintiff lists as defendant Corizon Corrections Healthcare and its employees Kerry L. Witty, CEO; Ralf Sulke, Vice President of Operations; and T. Bredeman, Associate Regional Medical Director. Plaintiff states that Corizon Corrections Healthcare is the parent company of Corizon Healthcare. Because the Court finds these allegations against defendants Corizon Corrections Healthcare, Witty, Sulke, and Bredeman sound in respondeat superior, the Court will not issue process on these defendants. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (liability under § 1983 requires causal link to, and direct responsibility for, the alleged deprivation of rights); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff).

Plaintiff also sues defendant Dr. John Deghetto, whom he states is the physician at Corizon Corrections Healthcare that reviews, approves, and denies request for referrals to outside medical specialists submitted by treating physicians and medical staff at MCC. Plaintiff was referred three times to an ENT by Dr. Aguilera at MCC, and was denied each time. Only on the last request, from an outside audiologist was plaintiff's referral approved. The Court finds plaintiff's claim of deliberate indifference to a serious medical need against Dr. Deghetto survives initial review, and will issue process on this claim.

*Corizon Healthcare and Its Employees*

Plaintiff lists as defendant Corizon Healthcare, and the following employees of Corizon Healthcare: Kathy Barton, Dr. Ruanne Stamps, Bonnie Boley, Geneen Wilhite, Debbie Willis, Laurel Davidson, Dr. Trinidad Aguilera, and Kerri Stoner.

The allegations against Kathy Barton relate to actions from 2011 through January 2013, and are barred by the five-year statute of limitations. The allegations against Kerri Stoner do not state any facts that would support plaintiff's claims that Ms. Stoner was deliberately indifferent to plaintiff's needs. For these reasons, the Court will dismiss defendants Kathy Barton and Kerri Stoner from this action.

Plaintiff has alleged, and his documentation supports, that Corizon Healthcare has a policy of supplying only one hearing aid to inmates, regardless of their condition. "Corizon Health has a policy in place to provide one hearing aid to qualified hearing impaired individuals regardless of the level of the hearing impediment or need for two hearing aids to allow for effective communication. Corizon Health also has a policy to deny required maintenance services for hearing aids, *e.g.*, replacement of proper tubing for connection of ear molds to hearing aids, and either providing tubing not intended for use with ear molds or not providing tubing at all." The Court finds that plaintiff has stated a plausible claim against Corizon Healthcare, Dr. Ruanne Stamps, Bonnie Boley, Geneen Wilhite, Debbie Willis, Laurel Davidson, and Dr. Trinidad Aguilera for deliberate indifference to a serious medical need will issue process as to these defendants.

*Missouri Department of Corrections and Its Employees*

Plaintiff lists as defendant the Missouri Department of Corrections ("MDOC") and its employees Alana Boyles, J. Cofield, Carri Collins, Deloise Williams. As to these defendants, the

Court finds that plaintiff has stated plausible claims against J. Cofield, who personally responded to plaintiff's grievance appeals. The remaining defendants Alana Boyles, Carri Collins, and Deloise Williams were not personally involved in or directly responsible for the incidents that injured plaintiff, and will be dismissed from this action. As to MDOC, plaintiff has not pointed to a policy of MDOC that caused his injury. Rather, he alleges it was the policy of Corizon Healthcare that is unconstitutional and caused his injury. For this reason, the Court will dismiss defendant MDOC.

Of the MDOC defendants, the Court finds that only J. Cofield personally participated in the alleged violation of plaintiff's constitutional rights, and thus the Court will issue process only as to defendant J. Cofield.

*MCC and Its Employees*

Finally, plaintiff lists as defendant MCC and its employees Dean Minor, Lisa Pogue, H. Townsend, J. Allen, and Tammy Morrison. Plaintiff states that MCC officials are using Corizon Healthcare's policy "to supersede federal and state statutes, MDOC's own policies, procedures and obligations promulgated by the ADA, by its own site ADA coordinator at MCC." He alleges that despite his serious medical need for two hearing aids and the required maintenance, *i.e.*, tubing replacements, MCC and its officials are refusing him this treatment. The Court finds that plaintiff has stated a plausible claim against defendants Lisa Pogue and J. Cofield,

Plaintiff's allegations against MCC and the remaining MCC defendants, Dean Minor, H. Townsend, and J. Allen, and Tammy Morrison fail to allege that these defendants were personally involved in or directly responsible for the incidents that injured plaintiff and these defendants will be dismissed.

**Plaintiff's Motion for an Emergency Injunction and Affidavit in Support**

Plaintiff submitted with his complaint a motion for an emergency injunction and affidavit in support. The Court will construe this as a motion for temporary restraining order. Plaintiff's motion was submitted without adequately giving notice to defendants. Under Federal Rule of Civil Procedure 65(b)(1):

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorneys only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and
>
> (B) the movant's attorney certifies in writing any efforts made to give the notice and the reasons why it should not be required.

It does not clearly appear from specific facts shown by plaintiff's complaint or verified motion that immediate and irreparable injury, loss, or damage will result to plaintiff before the adverse parties or their attorneys can be heard in opposition. The allegations in plaintiff's complaint have been ongoing since at least March 2016 and he has been seen repeatedly by many doctors, nurses, an audiologist, and an EMT. Moreover, plaintiff has not certified in writing the reasons why notice should not be required. As a result, the Court will not grant plaintiff's *ex parte* motion for an emergency injunction, but will order defendants to respond to the motion within fourteen days of service of the complaint.

**Plaintiff's Motion for Appointment of Counsel**

Finally, plaintiff has filed a motion for appointment of counsel. The motion will be denied without prejudice.

"A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). When determining whether to appoint counsel for an indigent litigant, the Court considers relevant factors, such as the

complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Id.*

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has presented non-frivolous allegations in his complaint. However, he has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case are complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis is **GRANTED**. [ECF No. 2]

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.70 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.[2]

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint, pursuant to the service agreement the Court maintains with Corizon, as to Corizon Healthcare, Dr. John Deghetto, Dr. Ruanne Stamps, Bonnie Boley, Geneen Wilhite, Debbie Willis, Laurel Davidson, and Dr. Trinidad Aguilera in their individual and official capacities.

---

[2] Prisoners must pay the full amount of the $350 filing fee. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner will deduct the payments and forward them to the Court each time the amount in the account exceeds $10. 28 U.S.C. § 1915(b)(2).

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to Lisa Pogue and J. Cofield in their individual capacities.

**IT IS FURTHER ORDERED** that defendants Corizon Healthcare, Dr. John Deghetto, Dr. Ruanne Stamps, Bonnie Boley, Geneen Wilhite, Debbie Willis, Laurel Davidson, Dr. Trinidad Aguilera, Lisa Pogue, and J. Cofield shall respond to plaintiff's motion for an emergency injunction within fourteen (14) days of the date they are served process.

**IT IS FURTHER ORDERED** that defendants Corizon Corrections Healthcare, Missouri Department of Corrections, Moberly Correctional Center, Kerry L. Witty, Ralf Sulke, T. Bredeman, Kathy Barton, Kerri Stoner, Alana Boyles, Carri Collins, Deloise Williams, Dean Minor, H. Townsend, J. Allen, and Tammy Morrison are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel is **DENIED without prejudice**. [ECF No. 3]

An order of partial dismissal will accompany this memorandum and order.

Dated this 16th day of July, 2018.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE