**RECEIVED**

APR 17 2019

BY MAIL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

DANNY W. RESTDALEN )
                    Plaintiff )
                              )
                              )
V                             )  Case No. 2:18-CV-39  JAR
                              )
CORIZON CORRECTIONS HEALTHCARE;) JURY TRIAL DEMANDED
Corizon LLC;                  )
Dr. John DeGhetto             )  Suit brought in OFFICIAL and
Jewel Cofield;                )  INDIVIDUAL CAPACITY.
Kathy Barton;                 )
Dr. Ruanne Stamps;
Bonnie Boley;
Geneen Wilhite;
Debbie Willis;
Laurel Davison;
Dr. Trinidad Aguilera;

Added defendants:
Dr. Paul Jones;
Dr. Allen Weaver;
Dr. Charles Scott;
Dr.  Hammerly;
Dr. Mandip Bartels

Missouri Department of Corrections;
Moberly Correctional Center;
Lisa Pogue;
Dean Minor;
J. Allen;
H. Townsend;

Added Defendant
Jamie Hampshire.

### PRISONER CIVIL RIGHTS SECOND AMENDED COMPLAINT
### UNDER 42 USC§ 1983

I. Place of confinement: Moberly Correctional Center 5201 south
Morley, P.O. Box 7, Moberly MO. 65270

CONTENTS

|   |   | PAGE |
|---|---|------|
| 1. | Caption | 1 |
| 2. | Content Page | 1.1 |
| 3. | Verified Amended Complaint | 2 |
| 4. | Parties | 2,3 |
| 5. | Statement of Claims | 4 |
| 6. | Deliberate Indifference Statement | 5 |
| 7. | Reference to Document #1 Statements and Facts | 6 |

CLAIMS AGAINST DEFENDANTS

| 8. | Amended: | Dr John DeGhetto | 7 through 11 |
|----|----------|------------------|--------------|
| 9. | Added: | Dr. Mandip Bartels | 7 through 11 |
| 10. | Added: | Dr Hammerly | 12, 13 |
| 11. | Added: | Dr Charles Scott | 14, 15 |
| 12. | Amended: | Dr Ruanne Stamps | 16 through 24 |
| 13. | Added: | Dr Jones | 25 through 28 |
| 14. | Added: | Dr Allan Weaver | 29 through 31 |
| 15. | Amended: | MDOC/ MCC | 32 through 44 |
| 16. | Added: | Jamie Hampshire | 45 through 48 |
| 17. | Injuries Suffered, | | 49 |
| 18. | Closing Statement | | 50 through 56 |
| 19. | Relief Requested | | 57 through 61 |
| 20. | Verification / Certificate of Service. | | 62 |

Legends

1. UMMD: Utilization Management Medical Director;

2. MARS: MDOC'S Medical Accountability Records System

3. Journal: Plaintiff's Personal Medical Journal provided to
   Defendants as part of Plaintiff's reply to Defendant
   Corizon's Request for Production of Documents.
   Mailed December 20, 2018.;

4. Exhibit: Reference back to Document # 1 Exhibits;

5. Exhibits A-1 & A-2: Reference to Defendant Corizon's Document
   # 19 Memorandum in Opposition, Exhibits;

6. Reference to Document # 1 statements and facts.

VERIFIED AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## I. INTRODUCTION

1. This is an amended §1983 action filed by plaintiff Danny D. Hestdalen a state inmate, alleging violations of his constitutional rights to receive medical care and seeking injunctive relief and money damages. Plaintiff also seeks an injunction and damages pursuant to the Americans with Disabilities Act and the Rehabilitation Act.

## II. JURISDICTION

2. Jurisdiction of this Court is invoked pursuant to 28 USC§1331 in that this is a civil action arising under the Constitution of the United States

3. Jurisdiction of this Court is invoked pursuant to 28 USC §1334 (a)(3) in that this action seeks to redress the deprivation,under color of state law, of rights secured by the acts of congress providing for equal rights of persons within the jurisdiction of the United States.

## III. PARTIES TO THIS ACTION

All defendant parties acted under color of state law and are being sued in their Official and Individual Capacities.

A. PLAINTIFF: Danny D. Hestdalen, at all times relevant is confined in the Missouri Department of Corrections at the Moberly Correctional Center at 5201 South Morley P.O. Box 7 Moberly MO. 65270

B. DEFENDANT PRISON MEDICAL PROVIDERS:
The following defendant Corizon LLC and persons named herein are, and at all times relevant, employees at Corizon Health Regional Office located at 3702 Truman Ste 104, Jefferson City MO. 65109.

Dr John DeGhetto: Regional MEdical Director;

Jewel Cofield: Director of Operations, Constituent Services;

Added Defendants:

Dr Hammerly: Regional MEdical Director

Dr. Mandip Bartels: Utilization Management Medical Director (UMMD)

The following defendants are, and at all times relevant, employees of Corizon Health Clinic located at the South Central Correctional Center (SCCC) at 255 west HWY 32 Licking MO. 65542:

Kathy Barton : RN. Director of Nursing;

   Added Defendant:

Dr Charles Scott: Site Medical Director/ Treating Physican;

The following Defendants are,aand at all times relevant, employees at the Corizon health clinic located at the Moberly Correctional Center at 5201 South Morley, P.O. Box 7, Moberly MO. 65270:

Dr Ruanne Stamps:Site Medical Director / Treating physican;

Dr Trinidad Aguilera: Treating Physican;

Bonnie Boley: Site Health Services Administrator;

Geneen Wilhite: Site Director of Nursing;

Debbie Willis: Site Director of Nursing;

Laurel Davison : Practical Nurse / Treating LPN.

   Added Defendants:

Dr Paul Jones: Treating Physican;

Dr Allan Weaver: Treating Physican;

The following Defendants were, and at all times relevant, employees of the Missouri Department of Corrections Moberly Correctional Center located at 5201 South Morley, P.O. Box 7 Moberly MO. 65270:

Dean Minor: Warden;

J. Allen: Assistant Warden;

H. Townsend: Assistant Warden:

Lisa Pogue: Assistant Warden / Assigned Americans with Disabililties Act Site Coordinator;

The Added Defendant, Jamie Hampshire is an audiologist, and at all times relevant, an employee of the Jefferson City Medical GRoup (JCMG) Hearing and Balance Center located at 1241 West Stadium Blvd. Jefferson City MO. 65109.

3

## STATEMENT OF CLAIMS

1. The foregoing Defendants occupy positions of authority within the MDOC and / or Corizon Health Contracted medical Services.

2. They Have and hold authority and responsibility to ensure that contracted medical services for incarcerated individuals in Missouri are in compliance with Federal, State, and Local laws, including the obligations promulgated by the Americans with Disabilities Act and the Rehabilitation Act.

3. Plaintiff states that Corizon LLC is wholly Owned and controlled by Corizon Corrections Healthcare who'se principle place of business is located at 103 Powel ct. Brentwood Tennessee, 37027.    (CCH)

4. Plaintiff further states that Corizon LLC is governed by the policies, procedures, and protocols pursuant to the mandates of CCH, it's parent Company.

5. Plaintiff also states that the MDOC and MCC have policies that are vague and unclear in meaning for provision of reasonable accommodations for the hearing impaired, which creats uncertainties for actual provisioning requirements.

6. Plaintiff's claims are the results of being denied:
   1) Reasonable Accommodations for his severe hearing impairment;
   2) Adequate medical care and treatment for an Eustachian Tube Dysfunction
      He suffers in his left ear since 2013. This condition has been diagnosed as a chronic condition by a Medical Doctor due to it's constant and continuous interference in his daily life, eg the inability to hear, and physical pain, dizziness, and the recent onset of nerve twitching on the left side of his face.
   3) The Eustachian tube Dysfunction (ETD), if left untreated, will result in continuing expansion of symptoms, permanent damage and ultimately, complete hearing loss in his left ear.

7. Thus Plaintiff continues to be subjected to Cruel and Unusual Punishment by the long standing denial of adequate medical evaluation and treatment for his ETD and increasing number of symptoms experienced.

4

## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

8   The refusal of defendant Hammerly to authorize the replacement of both hearing aids without any medical justification to deny the second aid needed to accomodate plaintiff's severe hearing impairment constituted Deliberate Indifference to plaintiff' serious medical needs in violation to the Eights Amendment.

9   Defendant Corizon prison Medical providers have a policy, procedure, protocol and Custom to:

   a) Provide one hearing aid regardless of need;

   b) restrict or deny provisions of required assessories for hearing aids,
   e.g. Standard ear mold replacement tubes for those with fitted ear molds.;
   c) restrict or deny adequate access to Medical Specialists requested by the treating Physican when such care requires further evaluation by appropriate specialist.;

   d) Not take steps to ensure that consultation requests for off site medical specialists contain accurate evaluation requests, e.g. request for evaluation of Eustachian tube Dysfunction of patients left ear.;

   e) not provide relevant medical history to limit the specialists ability to make informed evaluations and treatment recommendations.

10   This is believed to be true and done in order to deny or delay potentially expensive medical examinations and procedures e.g. MRI., and provisions such as reasonable accommodations for disabled individuals.  And does Not pertain to medical necessity but to limit Offender care expenditures in order to arbitrarily increase retained revenue at the expense of the Offender's Health.

5

By Reference to Document #1---Statements and Facts
Plaintiff makes the Following Amended
CLAIMS

11 .      The following defendants occupy positions of authority
within the MDOC, MCC and/or within the Corizon Corrections
Healthcare (CCH) and it's subsidiary company, Corizonhealth,
located in the Moberly Correctional Center.
      inc.

12 .  These defendants have and hold authority and responsibility to
ensure that the contracted medical services for inmates housed in
Missouri's Correctional centers are in compliance with federal,
state and local laws, and MDOC's own policies and procedures
which are not inconsistant with federal and state laws.
Including the obligations of the MDOC promulgated by the Americans
with Disabilities Act of 1990 and the Rehabilitation Act of 1973.

13 .      Plaintiff states that Corizonhealth inc, is governed by
Policies, Procedures and Customs pursuant to the Mandates of it's
Parent Company CCH.

14.  Plaintiff's Amended claims against the MDOC & MCC will show that MDOC
Policy Statements Contain arbitrary and vague language which directly affected
or caused plaintiff to be denied reasonable accommodations in violation of
Title II of the Americans with Disabilities 42 USC §12132, 28 CFR §35.160(a),
and §476.753 et seq of the RSMO.

15 .      The Claims and Evidence presented by the plaintiff against
the following defendants will show this to be an Undisputable
Fact.

6

Amended Claims against Dr John DeGhetto  AND
The Added Defendant: Dr. Mandip Bartels acting as UMMD

16. These defendants are responsible for reviewing, approving & denying referral requests from treating physicians for an off site medical specialist for further evaluation of serious medical conditions. Theyre also responsible for answering questions concerning medical issues and the need for said referrals.

17. Plaintiff began experiencing an ETD in January of 2013.
Between March 4 2013 and February 2017 Plaintiff received inadequate medical care and received limited treatment for his ETD by repeated prescriptions of sinus and allergy medications that fail to relieve the issue by Dr's Scott, Jones, Weaver and LPN Davison.

18. From August 2017 to April 2018 plaintiff was seen by Dr Aguilera. Upon review of plaintiff's medical history, Dr Aguilera determined that treatment by medication was already done and failed to address the issue. Thus Dr Aguilera requested an ENT for further evaluation of plaintiff's ETD in his left ear.

19. Dr DeGhetto is the listed medical Doctor in Corizon's  off site clinic for all questions and referral requests to off site medical specialists, and the Utilization Management Medical Directors or (UMMD) are believed to work under or in concert with Dr DeGhetto in approving or denying referral requests to off site medical specialists.

20. On August 30 2017, Dr Aguilera assessed plaintiff with profound bilateral congenital hearing loss and new findings of Eustachian tube Dysfunction in his left ear.  Dr aguilera determined that an ENT referral is warrented for further evaluation due to previous treatment with numerous medications failed to help.

21. On August 31, 2017 Dr Aguilera enters a referral for an ENT evaluation for possible Myringotomy tube placement to the UMMD for review. (See MARS pg. 319)

22. On September 18,2017 The UMMD replied: Please treat Eustachian tube dysfunction with medical treatment as first line treament and re-examine after adequate treatment.  The UMMD Denied the ENT request. (see MARS pg. 319)

7

23. On September 21, 2017, Plaintiff's second appointment with Dr Aguilera, Dr stated that the ENT was denied and that he was confused as to what they wanted him to do, medications have already been tried and failed. HE state " will confer with colleague and get back with plaintiff. (see Journal³ pg 28 & MARS⁴ PG 320).

24. On November 16, 2017, Plaintiff's 3rd appointment with Dr Aguilera, He asked plaintiff if he received Fluticasone and other meds. Plaintiff did not. Dr Aguilera stated he will re order the Fluticasone and other meds per inst- ructions from the unknown UMMD at Jefferson City. (see journal³ pg 29 & MARS⁴ pg 320-21) (Document⁺1 p₉ 43)

25. On January 5, 2018, after doing the treatment recommended by UMMD with no positive results, Dr Aguilera stated he will again request an ENT for further evaluation. He then showed plaintiff an article from ENTtoday.org, which stated that an Eustachian tube Dysfunction if left untreated, can cause Cholesteatoma and hearing loss. Dr Aguilera stated that this is why He requested an ENT. (see ~~complete~~ article Exhibit B pg. ~~130~~ Doc#28)(Journal⁵ Pg. 30)

26. On January 9,2018 Response from the UMMD states: If his last audiogram was in 2016 and the provider is suggesting his left ear has increased decreased hearing secondary to Eustachian Tube Dysfunction ( in 2016 records indicate symptoms in right ear) Please repeat an audiogram  (see MARS³ pg. 328)

Discrepancy:

27. On April 28 2016, Plaintiff was taken to JCMG Hearing & Balance for an audio-gram by audiologist Jaime Hampshire. In her report Ms Hampshire stated: ...sloping to profound mid to high frequency SNHL (sensory neural hearing loss) AU (both ears) Word recognition was poor at 64% AD ( right ear) and 52% AS (left ear) ... A routine check and clean of patients Hearing Instruments were performed. His right hearing isnt functioning appropriately and will likely require repair or a new right hearing instrument ... (see MARS² pg. 261)

28. It appears clear in the record that Audiologist stated left ear is worse than right ear in word recognition. The Audiologist changed the subject to address plaintiff's hearing aids, She calls them "Hearing Instruments" Due to a slip

8

of entry, she states "His right hearing isn functioning appropriately."

29. The UMMD clearly erred in his review and understanding of plaintiff's medical record. Nor did the UMMD conduct an adequate review of plaintiff's medical records prior to denying Dr Aguilera's first request for referral to an ENT, Thus this UMMD made a treatment recommendation; without first reviewing plaintiff's medical history, for a cocktail of sinus and allergy releivers, Now he misreads an audiology report and suggests a repeat audiogram.

30. On April 10, 2018 Plaintiff received a hearing exam at Capital Region Medical Center by Audiologist Kerri Low. This audiogram showed severe hearing loss and that Plaintiff is likely a candidate for Cochlear Implants. Dr Low also recommended an ENT to evaluate the Conductive Components before hearing aid recommendations can be made. (see MARS pg. 351-52)

31. Thus Dr Low clearly states an issue with the conductive components of plaintiff's ears is interfering with his hearing.

32. On April 16, 2018, Dr Aguilera enters the results of the audiogram and audiologists recommendation for further evaluation by an ENT.

33. On April 24, 2018 the UMMD approves the request for an ENT evaluation of ﹐ Bilateral Conductive Components of Plaintiff's ears. (see MARS pg. 351-52)

34. On May 4, 2018, Plaintiff is seen by Dr Reese Thompson an ENT at JCMG . Dr Thompson spent approximately five minutes with plaintiff before abruptly leaving after plaintiff asked if they received the hearing tests from 2011, 2016, and 2018 (last month) the Nurse assistant stated they have the hearing done here in 2016. This is when they left.

35. When the Nurse came back, she stated that they will have to reschedule the appointment because she could not get ahold of anyone at the prison to fax the most recent audiogram you told us about, and the Dr is irritated because Corizon wastes his time by not providing any records with patient.

9

36. Dr Thompson performed a cursory examination of plaintiff's exterior face and ears, looked in nose and mouth. He asked no questions about plaintiff's issues or why he was there. Then the nurse states they will need to reschedule due to lack of medical information. Plaintiff was never rescheduled to complete the examination.

37. On May 8, 2018, JCMG Dr Thompson faxed his final repport. It shows that they received the 2018 Audiogram. Upon review of the report it is apparent that Dr Thompson received no instruction to examine for a possible Eustachian tube Dysfunction. He did not have any medical history concerning the issue, as is apparent in the report of "No previous treatment" Past medical History states "No Known Problems"; Medication History "Analgesic balm, Naproxin."
EENT states ... Not present- ear pain,...ringing in ears...

38. Again, Dr Thompson asked no questions thus he is unawares of plaintiff's ringing ears, pain and other symptoms reported over the years.

39. On page 2 of the report, plaintiff wishes to bring attention to the Pharyngeal Exam.: Tonsils- not obstructive.

   Plaintiff's tonsils were removed in late 60's as a young child. Unless they grow back, there should have been no tonsils to view.

40. Thus Dr Thompson performed a cursory examination and review of the 2016 & 2018 Audiograms, States that 2018 audiogram shows discrimination has dropped severely and that he thinks the low frequency conductive pad reported in the 2018 Audiogram is a technical error. Dr Thompson did not attempt to verify his prognosis. He did agree with 2018 report in that He recommended Cochlear Implants if available. ( see Corizon's Suggestion in Opposition to Plaintiff's Motion for an Emergency Injunction, Exhibit A-2) Document #19

10

Plaintiff's Cause of Action Against Dr DeGhetto and The UMMD, Dr. Bartels

41. Count 1. Failed to properly review plaintiff's medical records prior to: a) responding to referral requests for an ENT on September 18, 2017; b) recommending first line treatment with medication on September 21,2017;

42. COUNT 2. Failed to accurately review 2016 Audiology report to justify denial of second ENT referral, and suggest a second audiogram thus delaying ENT exam.

43. COUNT 3. Failed to request that all pertinent medical information concerning the instruction to examine for an Eustachian tube Dysfunction, be provided to ENT Dr. Thompson so that he would know the true purpose of the visit and could make an informed diagnoses and recommendation for treatment:

44. COUNT 4. Due to repeated failures listed in counts 1 through 3, Defendants failure to perform the requisite reviews competently created additional delays in approval of appropriate specialists examination;

45. COUNT 5. Failure to provide appropriate instructions and medical information to ENT specialist so as to limit the specialists examination to confirm the known issue of severe hearing impairment and not to examine plaintiff for a more expensive procedure of evaluating plaintiff's Eustachian tube Dysfunction which was suppose to be the prupose of the visit;

46. COUNT 6. Plaintiff continues to suffer the Chronic ETD in his left ear, is denied the ability to participate in programs and activities, is expose to serious harm from his unperceived surroundings in a prison environment, and continues to suffer the physical and mental pain caused by the ETD Due to defendants DeGhetto and Bartels UMMDs Deliberate Indifference to His serious medical needs, health and safety.

47. COUNT 7. Defendants Deliberate Indifference Violates Plaintiff's Eights Amend-Ment right to be free from Cruel and Unusual Punishment; and

48. COUNT 8. Plaintiff Fourteenth Amendment right is violated as he is denied Adequate and meaningful medical care for a serious medical issue.

11

## Claims Against Dr Hammerly

49. On January 23, 2012, Plaintiff Hestdalen /received hearing aids after an audiogram performed on August 15, 2011 confirmed the need in order to adequately accommodate his hearing disability.

50. The request for two hearing aids was submitted to and approved by Corizon's Regional Medical Director, Dr Bynum on December 2, 2011. (see Document #1° and MARS pg137). (Document #1 Pg 18 paragraph 48 refers to plaintiffs view of Hardcopy records)

51. On March 8 2016 Plaintiff submitted a MSR for his left ear continuing to go into a negative pressure., difficulty hearing. pain. and vertigo caused by the eustachian tube dysfunction in his left ear . According to the MARS. pg 260, Nurse Dejonge was instructed to refer to Dr Jones.. Dr Jones then referred the issue to the RMD Dr Hammerly. Dr Hammerly approved a referral to an audiologist for an audiogram on March 11, 2016.(see MARS pg. 261)

52. On April 28,2016, Plaintiff was transported to Jefferson City Medical Group-Hearing & Balance. Audiologist Jamie Hampshire performed the hearing exam.

53. Prior to appointment Plaintiff's Right hearing aid quit working and was reported to Dr Jones. then After the audiogram was done, but prior to the approval of hearing aids Plaintiff's left hearing aid quit working.
Dr Jones referred the need for replacement of both hearing aids to Dr Hammerly on May 25, 2016.

54. On June 2, 2016 Dr Hammerly entered approval for replacement of one hearing aid with out any medical justificcation to do so. (see MARS pg. 277).
Plaintiff was told "You were prescribed One hearing aid per Corizon Policy"

## Plaintiff's Cause of Action Against Dr Hammerly

55. Count 1. Failure to provide reasonable accommodations for a documented serious hearing impairment;

56. Count 2. Failure to act on the information and his knowledge that refusing to provide adequate accommodations without medical justification violates Title II of the ADA , 476.753 RSMO, 28 USC §35.130 et seq.,;

57. Count 3. Denial of provisioning adequate accommodations for a Hearing impaired person exposes him to potential serious harm from the unperceived surrounding in a prison environment. 12

surroundings;

58.  Count 4. Plaintiff's Eight's amendment rights was violated when Dr Hammerly
       failed to provide adequate accommodations for his hearing impairement
     previously assessed as requiring two hearing aids, and reducing the accom-
     mdation to one hearing aid without any medical justification to do so;

59.  Count 5. As a result of Dr Hammerly's failure to approve replacement of both
     hearing aids, Plaintiff is denied the ability to communicate effectively, thus
     plaintiff is effectively denied access to programs, services and activities
     as well as exposing plaintiff to serious harm from his unperceived surroundings
     in a prison environment, Thus Dr Hammerly showed deliberate indifference to his
     serious medical needs and welfare;

60.  Count 6. Dr Hammerly Violated Plaintiff's rights for reasonable accommodations
     under the Americans with Disabilities Act 42 USC §12132, the Rehabilitation Act,
     and RSMO 476.753.

13

Claims Against Dr Charles C. Scott

61.     After several appointments and medication prescriptions that failed to
aleviate plaintiff's ETD in his left ear . On July 2,2013 Appointment with
Dr Scott for an update on ETD issue and finding that treatment failed again,
Dr Scott stated that he Didn't Know what else to do , will request an ENT
for further evaluation. (see Journal[3] pg. 10)

62.  Upon reviewing the MARS[2] plaintiff found that Dr Scott did, in fact state he
will recommend an ENT, but after he tries another medication,"Afrin Nasal
Spray" . He also assessed plaintiff with Eustachian Tube Dysfunction. THis
was the first time plaintiff was assessed with this condition by a treating
Physican. (see MARS pg 198)[1].

63.  On July 25,2013 Appointment with Dr Scott, the results of the Afrin treatment
which began on July 9, 2013, did not help. Dr Scott states that he can only
prescribe nasal spray for congestion or swelling of eustachian tube but
prolonged use may cause more serious problems. Dr Scott then stated that He
dosen't believe that Plaintiff will be permitted an ENT specialist visit.
He then recommends a six month lapse to review again at that time. Plaintiff
never sees this Doctor again.

64.  Upon reviewing the MARS plaintiff finds that Dr Scott entered " Left ear
continues to pop intermittently, relieved temporarily by valsalva. Difficult
to get this very presistent man to understand that there is no Tx (treatment)
for this. Sympathiomimetics not available. Assessment: Ear Problem. (MARS pg
199)[1].

65,  Dr Scott changed his assessment from an obvious Eustachian Tube Dysfunction
to an Ear problem. He also did not follow through with his last plan of
action to request an ENT. Yet Dr Scott was well aware that plaintiff's
issue was an Eustachian Tube Dysfunction and it's implications.

14

Plaintiff's Cause of Action Against Dr Scott

66. Count 1. Failure to provide adequate and necessary medical care for a serious medical condition by not requesting further evaluation by a specialist after treatment provided failed to address the issue.

67. Count 2. As a result of Dr Scotts failure, Plaintiff was denied adequate and reasonable medical treatment for a serious medical condition that, if left untreated, can lead to permanent nerve damage and hearing loss.

68. Count 3. Deliberate Indifference to plaintiff's serious medical needs by failing to request further evaluation by specialist, is shown by his knowledge and experience that an ETD is a serious medical condition warrenting further evaluation and treatment.

69. COUNT 4. Dr Scott's Deliberate Indifference Violates Plaintiff's Eights Amendment right to be free from Cruel and Unusual Punishment.

70. COUNT 5. Dr Scott Violates the Fourteenth Amendment by failing to ensure the required medical care is provided to protect a state prisoner's health and safety.

## Claims against Dr Ruanne Stamps

71. · Dr Ruanne Stamps is the site Medical Director for Corizonhealth at MCC. As such, She is responsible for ensuring that treatment provided to patients are within contracted obligatins and are in compliance with Federal, state and local laws and with the obligations of the MDOC promulgated by the ADA.

72. · On February 22 2018, Plaintiff Hestdalen received a late response to the IRR/Grievance #MCC-17-1178, by defendant Boley which was reviewed and the response tacitly approved by Dr Stamps, whose signature attests to this fact. Exhibit E-5 pg 120 & 121)

73. · Dr Stamps acquiesce to the response to this grievance which concerned the denial for provision of a replacement tube by Defendant Debbi Willis, states that it is a common and accepted practice to deny a required maintenance procedure for persons with hearing aids.

74. · Failure or refusal to replace the tubing on hearing aids render's the hearing aids unable to function in an optimum condition. Thus leaves plaintiff's hearing ability further reduced as he now has only one hearing aid which is reduced in operability due to refusal of medical staff to provide a replacement tube. A required maintenance procedure for hearing aids.

75. · Plaintiff continues to be denied a major life activity of hearing and communicating effectively, thus denies him to effectively communicate with Prison Staff, Medical Personnel and his peers.

76. · plaintiff is also denied the ability to participate in programs, services and activities offered by the MCC and Corizonhealth.

77. · Dr Stamps refusal to intervene and correct the obvious violation of plaintiff's rights to hear and of the ADA makes her liable to the litigation now filed against her and Corizonhealth.

16

Expanded
Claims Against Defendant
Ruanne Stamps

78. According to the Missouri Department of Corrections Institutional Services Manual I S 11, the following is stated:

79. IS 11-06, II Definitions: O. Responsible Physicians
Supervises clinical judgments regarding the care provided to Offenders at a specific institution. This includes establishing and implementing procedures for clinical aspects of the program; monitoring the appropriateness, timeliness and responsiveness of care and treatment; and reviewing the recommendations for treatment of Offenders made by healthcare providers in the community.

80. IS 11-2 Responsible Health Authority. II Definitions: M. Medical Director: A Contracted professional who serves as the site responsible physician of an assigned institution.

81. Is 11-3, III Procedures: 1. The medical director Shall Serve as the responsible physician;
6. The medical director will provide overall supervision for clinical services on-site and serve as liaison for clinical on-call services of his respective discipline;
8. Decisions on the types of treatment and need for transfer to outside resources Shall be the responsibility

17

of the medical director and/or the regional medical director.

82. Plaintiff states that Dr Roanne Stamps serves as the Moberly Correctional Center's Site medical director for Corizon.

83. According to the Institutional Services Manual, she is the responsible authority for arranging off site Specialists Appointments for Offenders at MCC.

84. Defendant Stamps is responsible for provisioning all relevant medical records to the specialists in order to make an informed consultation and examination of the offender's medical complaint.

85. On May 4, 2018, Plaintiff was transported to Jefferson City Medical Group ENT & Audiology clinic for an appointment with Dr Reese Thompson, an ENT specialist.

86. The appointment was the result of a recent audiology report that recommended an ENT to assess the conductive components of Plaintiff's ears. (see MARS pgs. 351-52)²

87. After a cursory examination of Plaintiff's extremities Plaintiff asked if they had all hearing exams from

18

2 ²

2011, 2016, and 2018. The nurse assistant stated they had the 2016 Audiogram done at their clinic. Plaintiff explained that the 2011 tests were prior to his ETD which began in 2013, and the 2016 and 2018 hearing tests will show the significance of his hearing loss since 2011 due to the ~~ETD~~ eustachian tube dysfunction (ETD) in his left ear. (see Document #1 pg 46, 224,225)

88. ~~The Doctor left~~ The Nurse and Dr Thompson left, When the nurse came back plaintiff was told, the appointment was canceled because she could not retrieve the ~~relevant~~ relevant information, and will have to be re scheduled.

89. On May 14, 2018 plaintiff was seen by Dr Stamps for a follow up appointment. Dr Stamps stated that Dr Thompson found nothing wrong with his eustachian tubes and that ~~plaintiff~~ he recommended two hearing aids be provided. (see Document #1 Pg 46, 226) [note: Dec #1 says May 25, actual date is May 14 2018]

90. Plaintiff informed Dr Stamps that a hearing aid won't help until the eustachian tube dysfunction is addressed.

91. Dr Stamps contacted Dr Thompson for a Treatment recommendation and Plaintiff ended up being prescribed Flonase. (See MARS Pg 355)

19

92. On July 16, 2018, at a follow up appointment with Dr Stamps. Plaintiff stated the treatment did not help. Dr stamps stated there's nothing more we can do and Dr Thompson doesn't recommend Surgery. Dr stamps refused to schedule another appointment with Dr Thompson. (see MARS 356-357)[2]

93. On 8-3-2018 2018, Plaintiff was provided a hearing aid for his right ear. Upon being turned on it Squealed every time he moved. Plaintiff stated; it's turned up too loud even for the hearing aid as it Squeals. Plaintiff could not accept it untill they

94. had it turned down. Plaintiff was later told it was adjusted according to the Audiogram and they will not re program it. Nothing more has been done about the hearing aid. Thus Plaintiff was never provided an acceptable hearing aid. (MARS Pg 1&2 last 2Pgs)[2]

95. Upon receiving a partial medical record and the Consultation report from Dr Thompson along with Defendant Corizon's Suggestion in Opposition to Plaintiff's Motion for an Emergency Injunction, Doc#29 Exhibits A-1 and A-2, Plaintiff learned that
a) Dr Thompson recommended an evaluation for Cochlear implants, and only recommended hearing

20

aids if implants are not possible with Corizon;
b) That Plaintiff's hearing dropped severely since
the 2016 Audiogram; and
c) that Dr Thompson was not provided any
relevant medical history concerning plaintiff's
hearing and eustachian tube dysfunction, nor
was he provided with the list of medication provided
over a Span of five years.

96. Dr Thompsons report revealed, his review of the
2016 and eventual provision of the 2018 Audiogram
the following:
1) Plaintiff's hearing dropped ~~severely~~ severely within
2 years. Not taking into consideration the
eustachian tube dysfunction;
2) That Dr Thompson "belived" the conductive pad
discrepancy reported in the 2018 Audiogram was a
technical error. He made NO Exam to assertain his belief.

97. Plaintiff believes that Dr Thompson failed to
verify his assumption of the conductive Component
discrepancy due to the fact he still suffers from
the eustachian tube dysfunction constantly.

98. 3) An audiogram follow up was recommended but

21

never enacted upon by Dr Stamps.

99. d) that Dr Thompson made no assessment concerning his eustachian tube dysfunction.

Plaintiff's Cause of Action
Against Defendant Ruanne Stamps

100. Plaintiff Hestdalen has been denied adequate accommodations for two serious medical conditions by Dr Ruanne Stamps.

101. 1) reasonable accommodations for his severe hearing impairment, as evident by the fact That Plaintiff Still has only One hearing aid;

102. 2) Adequate medical evaluation and treatment for a chronic eustachian tube dysfunction of his left ear, suffered since January of 2013. Due to it being a chronic Condition, Plaintiff believes it will Cause extensive permanent damage to his facial nerves and hearing if not treated soon.

Cause of Action
Plaintiff's Claims Against Defendant Stamps
include the following:

22

103. Count 1. Failure to provide reasonable accommodations for his severe hearing impairment;

104. Count 2. Failure to provide adequate and proper replacement tubes for his hearing aids

105. Count 3. Failure to provide all relevant medical information concerning plaintiff's eustachian tube dysfunction to Dr Thompson an ENT specialist, thus denying an adequate and informed examination by said specialist;

106. Count 4. Failure to provide a follow up appointment with the ENT specialist after the recommended treatment for the failed to help as required by the standard of care an ENT specialist is held to.

107. Count 5. Failure to act on information and knowledge that refusal to make further inquiries into the cause of Plaintiff's chronic eustachian tube dysfunction in light of all the symptoms reported and observations noted, continues to expose plaintiff to a substantial risk of severe nerve damage and hearing loss;

108. Count 6. Dr Stamps showed gross deliberate indifference to plaintiff's serious medical needs;

23

109. Count 7. Defendant Stamps refused to provide the standard of medical care required of a medical Director, and continues to deny needed medical care in order to reduce medical expenses for Corizon at the expense of plaintiff's health and well being; thus defendant Stamps expressed cruel and unusual punishment on Plaintiff;

110. Count 8. Defendant Stamps Violated Plaintiff's 8th Amendment right to be free from Cruel and unusual Punishment and deliberate indifference towards his health; and

111. Count 9 Plaintiff's 14th amendment rights which incorporates the 1st 4th 6th and 8th Amendments for Due process and access to adequate medical care have been violated by defendant Stamps.

112. Count 10. Violation of Corizon's Contract with the State of Missouri's Dept of Corrections to provide adequate Medical Care to it's inmates by denying plaintiff meaningful access to off site medical specialist in order to reduce Corizon's expenditures on offender Health care thus defendant Stamps made deliberate decisions not to provide relevant medical records and not to schedule a 2nd Ent visit when the recommended treatment failed, thus denying necessary med.care.

24

Claims Against Dr Jones

113. On February 17, 2016 Plaintiff Hestdalen submitted a Medical Service Request concerning the eustachian tube dysfunction (ETD) in his left ear. He reported the pain, negative pressure in his inner ear, Instances of vertigo and difficulty hearing. (Journal pg 19$\frac{3}{2}$)

114. On March 8, 2016 Plaintiff was seen by Dr Jones who stated he would request a referral to an ENT after reviewing the medical records and number of medications prescribed for the issue. But

115. On this same day Dr Jones enters on the MARS$\frac{2}{2}$ "Decreased Hearing sensation." He did not enter any of the symptoms Plaintiff complained of Nor of his repeated use of valsalva which he had to do throughout the meeting w Dr Jones in order to hear. (See MARS Page 261$\frac{2}{2}$)

116. On March 15, 2016, Plaintiff reports that his right hearing aid quit working. During this meeting his ear would not stay open even after repeated use of valsalva, yet Dr Jones fails to recognize the issue as an ETD. Dr Jones stated Plaintiff was approved to see an Audiologist who will also examine the hearing aid. (See MARS Pg 263$\frac{2}{2}$).

—25—

117. On May 18, 2016, Plaintiff informed Dr Jones that his left hearing aid quit working and he will need both hearing aids replaced.

118. On May 20, 2016. Appt w/ Dr Jones for ETD issue, Dr Jones prescribes Saline solution nasal spray and montelukast for sinus congestion, which I did not have.

119. On May 25, 2016 Dr Jones reports to Dr Hammerly that both of plaintiff's hearing aids quit.

120. On June 14, 2016, Plaintiff received one hearing aid for his right ear along with a Universal earpiece & tubes. Plaintiff requested a standard earmold replacement tube for his fitted ear mold. He was told, "Corizon doesn't provide tubes for hearing aids.

121. Plaintiff asked why only one hearing aid and was told "Corizon policy only requires provision for 1 hearing aid. (see Plaintiff's Journal $P 21^{3}_{.}$; MARS pg $280^{2}$)(MARS only shows issuance of hearing aid on 6-14-2016.)

- 26 -

Plaintiff's Cause of Action Against
Dr Jones

122. Count 1. Failure to inquire on the adequacy of auxiliary aids provided, and provision of proper replacement tubes for the hearing aid provided;

123. Count 2. Failure to inquire into the left ear issue and enter Observations of plaintiff performing valsalva, and symptoms reported by plaintiff into the $MARS.^{2}$;

124. Count 3. Failure to act on information and knowledge that failure to make further inquiries into a potentially serious medical issue exposes plaintiff to a substantial risk of serious harm if left untreated;

125. Count 4. As a result of defendant Jones's failure in Count 1, Plaintiff was denied adequate accommodations for his severe hearing impairment;

126. Count 5. As a result of defendant Jones's failure in Count 2, plaintiff was denied adequate medical care for a potentially serious medical condition;

127. Count 6. Dr Jonse clearly showed Deliberate Indifference toward Plaintiff's serious medical needs.

— 27 —

128. Count 7, Dr Jonse's Deliberate Indifference Violates plaintiff's 8 Th Amendment rights to be free of such indifference which also subjects Plaintiff to Cruel and unusual punishment;

129. Count 8; Plaintiff's 14 Th Amendment rights are violated as it incorporates the 4 6th, and 8th Amendments and requirement of adequate medical care for incarcerated individuals;

130. Count 9, Defendant Jones Violates Title II of the Americans with Disabilities Act 42 USC 12132 in that they are required to ensure adequate accommodations are provided.

131. Count 10, Violations of the Rehabilitation Act occurs when Plaintiff is denied the ability to participate in programs and services at an institution or private enterprise. due to a disability. Plaintiff was effectively denied access to programs services and activities offered by the institution.

- 28 -

Claims Against Dr. Allan Weaver

132. On February 1, 2017, Plaintiff's appointment with Dr. Weaver for multiple issues, including issues with his eustachian tube dysfunction in his left ear. Plaintiff informs Dr Weaver of his symptoms of negative pressure, pain, vertigo, and inability to hear in left ear.

133. Dr weaver performs a cursory examination and then informs plaintiff that there's not much that can be done for an ETD. He stated "the most common remedy is to insert a meringotomy tube through the eardrum and into the inner ear to allow for pressure equalization.

134. The drawback is the potential for foreign body or liquids to enter the inner ear and causing infections, also you would suffer from squalia and static noise as well

135. as additional hearing loss." He then stated that "they're (meaning Corizon) not going to approve an ENT visit." Thus plaintiff believed he had no options for the issue. (See Document #1 pg 41 paragraph 204)

136. But in the MARS,² plaintiff learns that Dr Weaver reports in his assessment: "Eustachian Tube Dysfunction - refuses to consider meringotomy tube. NO ENT refferral sought at this Time." (see MARS Pg. 305²)

— 29 —

137. Plaintiff was not made aware that the insertion of a meringatomy tube was an option available to him as Dr Weaver made it clear Corizon would not approve it.

138. Thus Defendant Weaver entered a falsely made report in the MARS² concerning plaintiff's serious medical condition and Plaintiff was left with no option at all. Nor was any further evaluation made concerning his ETD.

Plaintiff's Cause of Action
Against Dr Allan Weaver

139. Count 1. Failure to enter information provided truthfully in the MARS² and denying plaintiff of options available to him;

140. Count 2. Failure to act on the information and knowledge that refusal to make or request further evaluations into the cause of plaintiffs long standing eustachian-tube dysfunction, an obviously chronic condition, continues to expose plaintiff to a substantial risk of serious harm e.g. nerve damage and additional hearing loss.

— 30 —

141.
~~141~~ Count 3. As a result of Dr Weaver's failures, plaintiff was denied adequate and reasonable medical treatment for a serious medical condition. Thus 1

142. Count 4. Dr Weaver showed deliberate indifference to plaintiff's serious medical needs by falsifying the records eg reporting plaintiff refuses to consider insertion of a myringotomy tube, yet telling plaintiff ~~that~~ That Corizon won't permit an ENT for further evaluation for it;

143. Count 5. plaintiff's 8th amendment rights was violated by Dr Weaver's deliberate indifference to a serious medical need; which is cruel and unusual punishment;

144. Count 6. plaintiff's 14th amendment rights were violated as the 14th Amendment also incorporates the 8th amendment that prohibits cruel and unusual punishment, and imposes a duty on states to provide adequate medical care to incarcerated individuals;

— 31 —

AMENDED

CLAIMS AGAINST THE MISSOURI DEPARTMENT OF CORRECTIONS AND THE MOBERLY CORRECTION CENTER

145. Plaintiff's Claims against the Missouri Dept. of Corrections for the enactment of policies and procedures that contain Arbitrary and vague language which directly affected or Caused Plaintiff to be denied reasonable accommodations for his serious hearing impairment.

Upon review and scrutiny of the Missouri Dept. of Corrections policies entitled:

146. 1. Missouri Department of Corrections Department Manual
A) D5-5, Assistive Services to Offenders:
Signed by: Larry Crawford, Department Director;
Effective Date: July 22, 2005;

147. B). D5-5.1, Deaf and Hard of Hearing Offenders.
Signed by: George Lombardy, Department Director;
Effective Date: December 8, 2013; and

148. C) Division of Adult Institutions Moberly Correctional Center Standard Operating Procedures DPSOP 5-5.2 Disabled Offenders;
Signed by: Dean Minor, Warden Moberly Correctional Center.
Effective Date: May 10. 2013

32

149. Authorities Cited: A)&B): 217.040, 476.750 RSMO;
C) section 217.040 and Americans with Disabilities Act.

150. Plaintiff has found, what he believes to be
inconsistencies of language within the MDOC policies
and the ~~language~~ Statutes they claim as Authority.
~~Plo~~

151. Plaintiff Claims that MDOC'S Policy, D5-5, et seq,
Assistive Services to Offenders, contain Arbitrary
Language pertaining to provisions for hearing impaired
offenders, and explicit, restrictive language pertaining
to reasonable accommodations for hearing impaired individuals
which directly violate Federal and State statutes.

152. For instance, D5-5, I Policy statement: states
"The programs and Services provided to offenders by
this department or Contracted Services 'Should' ensure
accessibility and usability by qualified Offenders in the
integrated setting." ~~the department~~

153. "The department' should" make reasonable accommodations
or modifications 'should' be made to existing policies and
procedures to allow qualified Offenders with disabilities
the same opportunity as offenders who are not disabled,
unless to do so would be an undue burden to the department..."

33

Definition of "should":

154. Past tense of shall, but more often used as an auxiliary verb expressing degrees of the present and future and indicating:

1. Obligation; Duty: You should send her a note.
4. Uncertainty in a future event: I should think he would like to go.
5. Moderation of the directness or bluntness of a statement: I should hate to be late.
Citing: American Heritage Desk Dictionary, Copyright 1981 by Houghton Mifflin CO. (ISBN 0-395-31256-6)

155. Note: Should is often used as an auxiliary verb and indicating an Obligation but "not a requirement." The word "shall" according to definition, is a Command that must be followed.

156. This the wording in the MDOC Policy D5-5 Statement Creates a loophole, if you will, for the Remainder of MDOC policies. While it gives meaning of an "Obligation" it does not "require" DOC officials to follow guidlines or policies explicitly.

157. This is further expressed in the next paragraph of this policy which states:
It is the policy of the department to ensure that

34

deaf and hard of hearing offenders can effectively communicate with others. The Department 'Should' furnish appropriate auxiliary aids and services...".

158. Again they use the word "Should", meaning they have an obligation but are not required to provide said aids or services.

159. At D5-5.1, I, C. Scope: 1. "Nothing in this procedure is intended to give a protected liberty interest to any offender."

160.     Federal and State statutes & Regulations require the MDOC to provide appropriate and reasonable accommodations to the disabled: For instance, 217.040 RSMO states: "The Department "Shall" adopt, amend and appeal rules... which are not inconsistent with the Constitution of the United States."

161. 28 CFR 35.160 (b)(1): Non discrimination on the basis of disability in state or local government services subpart E Communications.

    A Public entity "Shall" furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities.

162. 42 USC § 12132 : Public entities "shall" make reasonable modifications of policies, procedures & practices when

35

Necessary to avoid discrimination on basis of disability.

163. They all Require the Department of Corrections to provide auxiliary aids and **services** as well as modifications to existing policies when necessary to avoid discrimination as expressed by the word "Shall"

164. At D5-5.1, II, K. Reasonable accommodations: Any change in the environment or manner in which tasks are completed that enables a qualified individual with a disability to participate in a program or service.

165. Note: Nothing is stated about provision of auxiliary aids or services as part of the reasonable accommodations meaning. Thus provisions are effectively excluded.

166. At D5-5.1 III Procedures: A., 5. Medical staff Shall complete the medical verification section of the request for reasonable accommodations **form** and consult with the caseworker and the Americans with Disabilities Act Site Coordinator to determine the appropriate accommodations for the offender.

167. This was not done as required expressed by the word "Shall". Instead the Medical staff, Defendant Boley, stated:"Per Corizon Policy" only 1 hearing aid will be provided.

36

168. The crux of the issue seems to be due to the following MDOC Policy Statements:

169. AT D5-5.1 III E., 2. a. Non functional personal hearing aids will be replaced, not repaired, and only to ensure the Offender has One appropriate functional hearing aid.; and

170, 3. If an Offender is deaf in both ears and the offender does not have a personal hearing aid, the Medical Unit will issue 1. hearing aid if medically necessary.

171. These MDOC policy statements are in direct Violation of the ADA; 28 CFR §35.160 et seq., e.g. 28 CFR §35.160 (a) requires public entities to take appropriate steps to ensure that communications with applicants, Participants, and members of the public with disabilities are as effective as communications with others.

172. The regulation also requires the public entity to furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in and enjoy the benefits of the entity's program.; In addition;

173. 28 CFR 35.130(b)(7) the regulations promulgated pursuant to the ADA of 1990 require public entities to make reasonable modifications in Policies, Practices, or procedures when the modifications are necessary

37

To avoid discrimination on the basis of disability
unless the public entity can demonstrate that making
the modifications would fundamentally alter the
nature of the service, program or activity.
28 CFR § 35.130.(b)(7); and 42 USC§12132.

174. At D 5-5.1 III N. Reasonable Accommodations:
2. The initial determination made during the diagnostic
and Classification process shall follow the offender
through any transfer unless a medical determination
is made at a later date that modifies or removes
the determination.

175. There was no medical determination made to Justify
the Provision of only One hearing aid or whether
One hearing aid would be appropriate accommodations
for Plaintiff's severe hearing impairment.

176. Instead, Corizon Policy dictated the Provision of
reasonable accommodations and restricted it to
Provision of One hearing aid if medically necessary
and only if it's medically necessary.

177. The Corizon policy seems Justified due to MDOC
Policy D 5-5.1 III, Ei, 2 & 3. And, because the
MDOL Policy D 5.5 states the department Should

38

make reasonable accommodations, Carizon has determined that they are not required to.

> Division of Adult Institutions
> Maberly Correctional Center Standard
> Operating Procedures. DPSOP 5-5.2
> Disabled Offenders:

178. In DPSOP 5-5.2 III Procedures:
B. Site Coordinators:

a. The Americans with Disabilities Act Site Coordinator "Shall": (1) Provide oversight for the aquisition, maintenance, repair, replacement and distribution of auxiliary aids;
(4). monitor Compliance with the requirements of the Americans with Disabilities Act and this procedure.
(A) The ADA site Coordinator Will submit a written memo to the Chief Administrative Officer (CAO) of any relevant ADA issue within 2 working days of being notified by an offender or staff member.
(B) The ADA Site Coordinator Will submit the ADA Complaints / Grievances reports (attachment A) to the CAO and the ADA Department Coordinator by the 5th of each month for the proceding month.

179. Here the words "Shall" and "Will" are used thus the Site Coordinator is "required" to perform the Stated Procedures.

39

180. Yet Defendant Pogue failed to monitor compliance with ADA requirements, and acquiesces to corizon and MDOC policies D5-5.1 concerning provision of only one hearing aid.

181. As stated in DPSOP 5-5.2 III, B, 4a., 4., 4., there should be written memoranda concerning Plaintiff's complaints, grievances and Requests for reasonable accommodations reports submitted to the CAO and the ADA Department Coordinator. Thus Both Will have been made aware of Plaintiff's pleas for reasonable accommodations and failed to intervene.

182. Under the Revised Statutes of Missouri 217.040 The Department of Corrections shall have authority to adopt, amend, and repeal rules and regulations under the provisions of chapter 536 RSMO as necessary or desireable to carry out the provisions of this chapter which are not inconsistent with the Constitution of this state;

183. 217.185:
The CAO shall, (4) be liable to like penalties and punishment for any neglect or violations of duty. - -

184. 217.370: The CAO... shall establish offender grievance procedures. - - (and) shall observe these rules and procedures at all times.

49

185. ~~Height~~ Neither the CAO, nor his assistant wardens followed or observed the grievance procedures concerning ADA violation issues.

Therefore they should not have been granted immunity in their official or individual capacities.

186 Plaintiff filed grievances for violations of his rights for reasonable accommodations for his severe hearing impairment, which, according to the Americans with Disabilities Act 42 USC 12132 requires the Department of Corrections to provide.

187 All defendants showed deliberate indifference to his serious medical needs for reasonable accommodations and for his serious medical needs for adequate and proper treatment of his eustachian tube dysfunction in his left ear which renders him nearly completely deaf, continues to cause physical pain, nerve twitching and emotional stress, as well as exposes him to potential of serious physical harm due to unperceived surroundings in a prison environment, and the grave possibility of the presence of a tumor thats causing the ETD issue.

188 Thus Plaintiff is denied reasonable accommodations, denied adequate medical care, and denied

41

the ability to participate in Programs, services and activities due to inability to hear and communicate effectively.

189. Defendants acted under Color of State law in denying adequate accommodations for his hearing impediment by Implementation of and adherence to MDoC Policy P5-5 which contains arbitrarily vague language concerning provisions of reasonable accommodations for the hearing impaired, and language that actually violates Federal statutes 42 USC § 12132 et seq, and Section 504 of the Rehabilitation Act. and 28 CFR § 35.101 et seq for ADA Regulations.

190. P5-5.1, III E, 2. and 3 violate both State and Federal regulations as they arbitrarily limit accommodations provision.

191. Plaintiff believes the Policies Directly Caused his injuries as they state an obligation but not a requirement to provide reasonable accommodations for his severe hearing impairment.

192 The denial of adequate and reasonable medical services and care invokes Cruel and Unusual punishment beyond the intention of the sentencing court. thus Defendants acted with deliberate

42

indifference to Plaintiff's serious medical needs and health and welfare.

193. Defendants violated Plaintiff's 8th Amendment right to be free from cruel and unusual punishment

194. Defendants Violated Plaintiffs 14th Amendment right as they failed to intervene and ensure that Plaintiffs serious medical needs were being adequately met thus the 14th Amendment incorporates the 8th Amendment to be free of infliction of cruel and unusual punishment the 14th Amendment requires prisons to provide adequate medical care to its offender population

195. Although the Federal District Court can not order any states or their agencies and officials to conform their conduct to state law, citing Randolph v Rodgers 170 F 3d 850 (8th cir Mo 1999); However,

196. The District Court can use the violations of state law as undisputable evidence of violations of Federal laws, Such as: 28 CFR 35.130 et Seq. 42 USC § 12132; of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act...

CAUSE OF ACTION AGAINST
THE MISSOURI DEPARTMENT OF CORRECTIONS.
and its Directors, ~~Wardens~~
For the following reasons:

197. Count 1. Developed and, enacted Policy inconsistent
with state and Federal statutes ~~and the~~
and The US Constitution

198. Count 2. Enacted Policies that actually violated
Plaintiff's Constitutional rights to adequate and reasonable
accommodations for his ~~serious~~ severe hearing loss, and serious
medical needs.

199. Count 3. Deliberate indifference to Plaintiff's
serious medical needs is condoned by the Policy's
Vague decree in enforcement language. eg. Use of the
word "Should" which entails an Obligation but not a requirement,

200. Count 4 Violation of Plaintiff 8th Amendment right
to be free from the deliberate indifference of his
serious medical needs. and denial of adequat accommodations
for his severe hearing impairment.

201. Count 5. Violation of Plaintiff's 14th Amendment right
to adequate medical Care for serious medical needs.

202. Count 6. Violations of Title II of the ADA and
Section 504 of the Rehabilitation Act. in the
denial of access to Programs, services and activities.
44 ~~ED~~

Claims Against
Jamie Hampshire, Audiologist for
Jefferson City Medical Group - Hearing & Balance.

203. On April 28, 2016 Plaintiff Hestdalen was transported to the Jefferson City Medical Group - Hearing & Balance Center for a hearing evaluation and inspection of a nonfunctioning hearing aid.

204. As stated on page 22 paragraphs 73,74 Plaintiff's left ear keeps developing negative pressure thus rendering him nearly completely deaf in that ear.

205. Defendant Hampshire refused to listen to Plaintiff as he tried to explain that the hearing test was flawed due to the Eustachian tube dysfunction in his left ear.

206. Upon receiving his partial medical records from Corizon, Plaintiff learned that Ms Hampshire did not report any discrepancies in the hearing test. Nor did she mention anything about the air bone gap or conductive components of his hearing.

207. Ms Hampshire stated plaintiff's right ear was the better ear thus she recommended a hearing aid for his right ear only, yet she stated to plaintiff that he really needed two hearing aids but Corizon will only provide one. ( see original complaint Pg 22 Paragraph 71 )

45

208. Ms Hampshire did not state that plaintiff would receive adequate accommodations with one hearing aid, Nor did she state plaintiff should be provided two hearing aids.

209. Defendant Hampshire is not an employee of Corizon, She is an employee of a private company Jefferson City Medical Group.

210. Defendant Hampshire acted under color of state law in providing medical care at the direction and limitation of Corizon policy and practice.

211. Defendant Hampshire administered a less ~~efficious~~ efficacious course of testing and made recommendations at the direction and policy of defendant Corizon.

212. Defendant Hampshire provided this less efficacious testing and recommendation in a concerted effort to limit medical expenses for corizon at the detriment of Plaintiff's actual medical needs.

213. Thus defendant Hampshire permitted defendant

Corizon to exert control over the level of audio testing and recommendation she provided, therefore she was acting under color of state law. (See Harris v. Corizon LLC 2014 US DIST LEXIS 154813 (EDMO 2014)).

Cause of Action Against Defendant Hampshire

214. Count 1. failure to make an independant hearing examination to determine actual level of hearing loss;

215. Count 2. failed to report any discrepancies in the application of the hearing exam. e.g. Plaintiff's statement of an eustachian tube dysfunction should have alerted her to possible interference of hearing test;

216. Count 3. failed to conduct the standard of care required of an Audiologist by not making recommendations based on an actual and complete hearing evaluation; Count 4. *

217. Count 4. The actions of defendant Hampshire showed deliberate indifference to Plaintiff's severe hearing impairment by failing to perform a thouroough and complete Audiogram and make recommendations based on the actual needs of Plaintiff.

47

218. Count 5- Violation of plaintiff's 8th Amendment right to be free from deliberate indifference to a serious medical need.

219. Count 6 denied plaintiff's liberty interest in receiving competent medical care and recommendations thus violated plaintiff's 14th Amendment which incorporates the 4th, 6th and 8th amendments for Due Process, liberty interest and right to receive adequate and reasonable medical care.

220. Count 7. Defendant Hampshire Contributed to the continued denial of reasonable accommodations for his serious medical needs. e.g. 2 Hearing aids to adequately accommodate plaintiff's level of hearing loss and recommendation at an Ent for further evaluation at plaintiff's eustachian tube dysfunction complaint.

## Injuries Suffered

221. Actual damages suffered thus far include but not limited to the following:

1. increased hearing loss as shown in the three hearing exams granted by Corizonhealth.
2. physical pain in left ear and head, instances of vertigo and nerve twitching on left side of face;
3. an eustachian tube dysfunction which developed in the left ear in January of 2013;
4. continuous bouts of complete deafness caused by the eustachian tube dysfunction since January 2013
5. Emotional pain and grief from the continuous instances of of deafness and inability to communicate and or hear.

222. Unknown damages suffered include the potential for the inner ear to to contain an Acoustic Neuroma in the inner ear and permanent hearing loss.(Referr to pg 66 para 362)

223.                    Benefits Denied

Corizonhealth has denied and MDOC officials acquiesce to the denial, the following but not limited to;

1. the provision of two hearing aids to compensate the severity of Hestdalen's serious hearing impediment;
2. provision of the correct earmold replacement tubes;
3. provision of any replacement tubes for Hestdalen's hearing aids, a required maintenance procedure every six months; Last tube replacement was on April 6 2017;
4. access to programs, services and activities offered within the DOC; (Exhibit G pgs 124 thru 127)
5. ability to communicate effectively with prison and medical staff and other inmates;

Closing Statement of Amended Complaint

Summary

Plaintiff Hestdalen's summary of his claims are as follows:

224. Denial of Adequate Accommodations
a) Plaintiff has a well documented record of severe hearing impairment requiring two hearing aids with dial type volume control to provide adequate accommodations for his level of hearing loss;

225. In 2016 both hearing aids provided by Corizon in 2012 quit working. Corizon's Regional Medical director approved for 1 replacement hearing aid with no medical justification to do so. Instead, it was Corizon Policy which states, "One hearing aid will be provided.

226 Thus Plaintiff is denied adequate accommodations for his severe hearing impairment by Policy.

Denial of Required maintenance
227. In 2016 Plaintiff requested replacement of his ear mold tubes (Standard Ear Mold Replacement Tubes) on his hearing aids. Defendant Jones's assistant nurse stated "we don't provide tubes for hearing aids."

- 50 -

228. Prior to being transferred to the Moberly Correction center, standard ear mold replacement tubes were provided as needed albeit untimely. Proof is in the MARS. Prior to 2016.

229. Grievances were filed, a tube was first provided that was not meant for use with ear molds.

230. Upon the next request for a replacement tube, it was denied by the New D.O.N. Defendant Willis again stating Corizon doesen't provide tubes for hearing aids. Proof is in the MARS². Denial by policy & Custom.

Interference with Medical Judgment by Factors Unrelated to Prisoner's Medical Needs and

Denial of Adequate Medical Treatment for an Eustachian Tube Dysfunction (ETD)

231. Plaintiff has a well documented case of a Chronic Eustachian Tube Dysfunction in his left ear.

232. Plaintiff has suffered this eustachian tube dysfunction (ETD) since January of 2013 thus its considered a long standing presistent condition or a Chronic condition.

233. This ETD has been assessed by Four treating physicians and One licensed practical Nurse:

— 52 —

1. 7/2/13 by Dr. Scott, SCCC (MARS[2] Pg 198);
2. 10/13/16 by LPN Davison, MCC (MARS[2] Pg 293);
3. 2/1/17 by Dr Weaver, MCC (MARS[2] Pg 305-06);
4. 9/21/17 by Dr Aguilera, MCC (MARS[2] Pg 320);
5. 7/16/18 by Dr Stamps, MCC (MARS[2] Pg 1&2 2018);

234. All treating physicians refused to request a referral to a specialist for further evaluation. except for Dr Aguilera.

235. Dr Aguilera was the only ~~Doctor~~ treating physician who showed concern for plaintiff's chronic condition, as he made two requests for a referral to an ENT for further evaluation. Upon being denied the second request, Dr Aguilera showed plaintiff an article he procured from ENTtoday.org, ~~as~~ a medical information website for ENT specialists.

236. In the article. Dr Aguilera pointed out the reason for his concern based on my history of symptoms. The article he referred to stated:... a chronic eustachian tube dysfunction left un treated can cause Colosteatoma and hearing loss."

237. Thus Dr Aguilera has determined that plaintiff has a chronic ETD that warrants further investigation.

238. Plaintiff was Not aware of this possibility until it was brought to his attention by Dr Aguilera.

— 52 —

Corizon's Responsible Party Fails
To Provide Relevant ~~but~~ Medical Information

239. Thanks to Dr Aguilera's presistence, plaintiff
was provided an audiology visit who's examination
revealed conductive component discrepancies in A
plaintiff's hearing test's, and recommended further
evaluation by an ENT.

240. Plaintiff was scheduled and transported to an
ENT, Dr Thompson, who, ~~because~~ for lack
of any medical history and reason for the
visit other than, plaintiff has hearing problem,
~~and~~ Dr Thompson performed a cursory external exam.

241. I g informed that there are other hearing tests
prior he needs to view including a more recent $\overset{one}{\sout{one}}$
~~by plaintiff~~ done in 2018. Dr Thompson stops his examination
the appointment is cancelled $\overset{cancled}{}$ until additional information is obtained.

242. In the end Dr Thompson examined plaintiff
based on Corizon's Consultation for medical services
request, $\overset{with}{and}$ no prior medical history of plaintiff's
complaint eg. ETD, or treatment provided. Thus
plaintiff was not afforded an adequate examination
for his ETD issue, the actual purpose of the visit.

243. Wherefore Dr Thompson's medical Judgment was interfered with by factors unrelated to Plaintiff's medical needs. Corizon's the Policies and Procedures are designed to limit proper diagnosis and treatment by denying provisions of medical history to off site specialists. Thus the results of the off site visit is so Cursory as to amount to no treatment at all. Denial of adequate medical care Constitutes Deliberate Indifference.

The Missouri Department of Corrections: and Moberly Correctional Center

244. The MDOC and MCC have a policy entitled: "Assistive Services to offenders" D5-5 et. seq., that contains Vague and ambiguous language which states an Obligation but not a Requirement to provide reasonable accommodations to its incarcerated offenders with hearing disabilities.

245. D5-5.1 III, E: 2. states ... and only to ensure the offender has one appropriate functional hearing aid; and 3. ... the medical unit will issue one hearing aid if medically necessary.

246. Thus corizon's policy seems Justified by DOC's

- 54 -

Policy.

247.   Failure to provide adequate and necessary accommodations to a severly hearing impaired offender is cruel and unusual punishment. It deny's, by inability to hear and comprehend speech in order to communicate effectively, thus denies Plaintiff the ability to participate in Programs, services, and activities within the institution. It also exposes him to an excessive risk of harm from his unperceived surroundings. in a Prison environment.

248.   The MDOC and MCC have policies and procedures that require notification to the CAO and Regional officials of certain Grievance issues, including issues concerning un resolved ADA complaints and requests to Appeal the Denial/Request for Reasonable Accommodations requests.

249.   Plaintiff filed grievances and concerning denial of reasonable accommodations and filed requests for reasonable accommodations for his severe hearing impairment to the site ADA coordinator.

250.   Plaintiff stated in the grievances the violation of ADA requirements thus gave more than fair notice for opportunity to correct the wrong being committed.

251.   The DoC officials showed a reckless disregard

to the excessive risks to plaintiff's health and
safety.

252. The Officials knowledge of the Violative Practices
and disregards those Practices is deliberate
indifference to a Serious medical need
see Farmer v Brennan 511 US 825, 835-837 (1994)

253. Plaintiff continues to be at risk of Serious
damage to his future health and well being, in that
the ETD which has been determined to be a Chronic
condition by a medical Doctor. Has not been
properly examined to determine its Cause, Nor
Was any examination been performed to ensure that
there is not a Colasteatoma or acoustic Neuroma
present. Failure to detect and eradicate these types
254. of tumors will allow them to Continue to grow and engulf
more vital nerves and eventually the brain stem, thus
Causing unknown amounts of permanent damage to
plaintiff.

255. The Prison grievance system fails to provide any equitable
relief for grievances Concerning medical issues and is
nothing but a process to force inmates to be delayed & denied
proper medical Care as the responses never address the issues.

- 56 -

# Relief Requested

WHEREFORE, Plaintiff requests this Court to grant the following relief:

1. Declare that reasonable accommodations for hearing impaired Offenders are governed by the following Regulations and statutes; 28 CFR 35.160(a), Section 302(b)(2)(A)(ii), Section 504(b)(1)(A) of the Rehabilitation Act, 42 USCS § 12132 of the Americans with Disabilities Act, and §476.753 of the RSMO; and, that the Violation thereof, Constitutes ~~Cruel~~ ~~and~~ Deliberate Indifference to a Serious medical need, and is an enactment of Cruel and unusual Punishment against Offenders with hearing disabilities,

2.             8th Amendment

Declare that the following Defendants Violated Plaintiff's Eighth Amendment rights pursuant to the declaration requested in number 1., when they purposely denied the Provision of adequate accommodations for Plaintiff's documented severe hearing impairment by refusing to replace two previously approved replacement hearing aids and providing only One hearing aid without any medical Justification to do so. by the following Defendants:

-57-

a) Hammerly      g) Cofield

b) Boley      h) Pogue; (Grievance Mcc 16-722)

c) Stamps      i) Minor, review of Grievance

d) Aguilera      j) H Townsend, review of IRR

e) Corizan, Policy      k) Bredeman, review at Appeal

f) MDOC, Policy      l) Hampshire

3.      Required Maintenance for Hearing Aids

Declare that the following defendants Violated Plaintiff's Eighth Amendment Rights pursuant to the Declaration requested in #1. by denying Plaintiff's requests for required maintenance service for his hearing aids by refusing to provide replacement tubes for his ear molds thus rendering the hearing aids unable to perform as intended. Defendants:

a) Boley      e) Cofield; (Grievance Mcc 17-1178)

b) wilhite      f) Allen, by review of IRR

c) Willis      g) Minor, by review of Grievance

d) Stamps      h) Bredeman, by review at Appeal

     i) Pogue

4.      Medical Care for ETD

Declare that the following defendants Violated Plaintiff's Eighth Amendment Rights to adequate Medical care for a well documented Chronic eustachian tube dysfunction in his left ear. and has clearly exhibited Deliberate Indifference to his

$-58-$

Serious medical needs; Defendants:

a) Scott                    f) Cofield
b) Jones                    g) DeGhetto
c) Weaver                   h) UMMD John Doe(s)
d) Stamps                   i) Allen, review of IRR(MCC 18-475)
e) Davison                  j) Minor, review of Grievance "
                            k) Bredeman, review of Appeal "

5.                  14th Amendment

Declare that all named defendants violated plaintiff's
Fourteenth Amendment rights which require Correctional
Institutions and Contracted Medical Care Providers to
provide adequate medical care pursuant to the standard
of care required for Institutionalized Offenders.

                  Color of State Law

6. Declare that all named defendants acted under
Color of State law through the enactment and adoption
of Policies, Procedures, protocols and Customs at
MDOC, MCC and Carizon.

7.                  Injunction

Issue an injunction requiring that defendants
Prison medical providers, provide an Off Site Medical

- 59 -

Specialist, experienced in diagnosing and treating
eustachian tube dysfunction utilizing up to date
modern technology, to evaluate and treat plaintiff's
eustachian tube dysfunction, and to include all pertinent
medical records e.g. Complaints, symptoms stated and observed,
treatment provided including medications dispensed;

8. The injunction should include the following clauses:
(a) In the event that an acoustic neuroma is detected,
     then (i) immediate surgery is warranted for it's removal;
    (ii) rehabilitation procedures recommended by specialist
         to be required.
   (iii) Provision of Auxiliary aids for hearing loss due
            to damage by tumor to be required, including Cochlear
            or other implantable device to restore hearing;
(b) In the event that no tumor is detected then,
    (i) determination by specialist to consider balloon
         dilation of eustachian tube procedure;
    (ii) ~~permit~~ require all specialist recommended follow up
          appointment be mandatory
   (iii) Upon successful treatment of the eustachian
           tube dysfunction, an updated Audiogram is
           warranted.
   (iV) new hearing aids with dial type volume control

$- 60 -$

to be provided to accommodate Plaintiff's hearing
impairment based upon the updated audiogram;

(V)  Provision of the correct "standard ear mold
replacement tubes" for fitted ear molds to be
provided as needed (every 6 months);

9. Award of Compensatory Damages for Plaintiff's
Physical and emotional injuries, and punitive
damages against each defendant;

10. Award additional damages in the event a
tumor is detected and plaintiff sustains significant
additional damages including total hearing loss in
left ear, facial nerve damage etc, from the

11. Grant plaintiff such other relief as it may appear
Plaintiff is entitled to.

## VERIFICATION

I, Danny D. Hestdalen, have read the foregoing statements and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at the Moberly Correctional Center, Moberly Missouri on this __15__ day of ~~February~~ 2019.
            *April*

Danny D. Hestdalen #361225
Moberly Correctional Center
P.O. Box 7 Moberly MO. 65270

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served via first class US Mail, Postage prepaid on this __15__ day of ~~February~~ 2019 to the following:
                *April*

J. Thaddeus Eckenrode
Eckenrode- Maupin Attorneys at Law
11477 Olde Cabin Rd., Ste 110
St. Louis, Mo. 63141
Attorney for Defendants Corizon LLC et al.,
        and

Ms. Denise G. McElvein
Assistant Attorney General
P.0 Box 861 St. Louis MO. 63188
Attorney for Defendant Pogue

/s/ _____

Plaintiff