**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| DANNY D. HESTDALEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-CV-00039-JAR |
| | ) | |
| CORIZON, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Motions for Summary Judgment filed by Defendants Missouri Department of Corrections ("MDOC"), Moberly Correctional Center ("MCC"), and Lisa Pogue (collectively, the "MDOC Defendants") (Doc. 194)[1] and Defendants Corizon, LLC ("Corizon"), Mandip Bartels, Ruanne Stamps, Bonnie Boley, Geeneen Wilhite, Debbie Willis, Laurel Davison, Jewel Cofield, Thomas Bredeman, Milton Hammerly, Paul Jones, Charles Scott, and Alan Weaver (collectively, the "Corizon Defendants"). (Doc. 199). Both motions are fully briefed and ready for disposition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is currently incarcerated at MCC and has been incarcerated at either South Central Correctional Center ("SCCC") or MCC at all times relevant to the Second Amended Complaint ("SAP"). (Doc. 196 at ¶ 1; Doc. 207 at ¶ 4).[2] Plaintiff has an established history of bilateral

---

[1] MDOC Defendants previously filed a Motion to Dismiss which has also been briefed. (Doc. 186). The Motion to Dismiss makes similar arguments as the Motion for Summary Judgment. To the extent the MDOC Defendants' Motion to Dismiss makes arguments which are not discussed in the Motion for Summary Judgment, such arguments will be specifically addressed herein.

[2] MDOC Defendants filed a Statement of Uncontroverted Material Facts ("MDOC SUMF") along with their Motion for Summary Judgment. (Doc. 196). After Plaintiff offered initial responses to the MDOC SUMF in his response to the Motion for Summary Judgment (Doc. 220-3), this Court granted Plaintiff leave (Doc. 241) to file a more thorough

1

sensorineural hearing loss and uses hearing aids for assistance. (Doc. 196 at ¶¶ 2-3). Throughout his time at MCC, Plaintiff has had numerous difficulties with his hearing and many appointments with specialists, physicians, and nurses, including most of the Corizon Defendants. (Doc. 196 at ¶ 4). Corizon is under contract with the State of Missouri to provide medical care and treatment to inmates within the MDOC, including those at MCC. (Doc. 207 at ¶ 2).

Plaintiff's SAP, brought pursuant to 42 U.S.C. § 1983, broadly claims that the MDOC Defendants violated Plaintiff's statutory and constitutional rights in the course of treating (or allegedly failing to treat) his hearing issues. (Doc. 69 at ¶¶ 145-202). Plaintiff also argues that the Corizon Defendants were deliberately indifferent to Plaintiff's serious medical needs in accordance with policies and procedures which resulted in the denial of necessary medical care. (*Id.* at ¶¶ 1-144). Plaintiff's primary allegations are that Defendants failed to adequately treat his Eustachian Tube Dysfunction ("ETD") or provide him with fully functioning hearing aids.

This Court recognizes its obligation to construe the pro se Plaintiff's partially handwritten SAP liberally. *Estelle v Gamble*, 429 U.S. 97, 106 (1976). As evidenced by the docket, this case has an extensive procedural history involving various dismissals, amended filings, and other motions. Accordingly, in the interest of clarity and given Plaintiff's pro se status, this Court liberally interprets the SAP as making the following claims against the respective Defendants:

A. <u>Corizon Defendants – Medical Claims</u>: Plaintiff alleges deliberate indifference to his serious medical needs against the following:

o Dr. Charles Scott (Doc. 69 at ¶¶ 61-70)
o Dr. Paul Jones (*Id.* at ¶¶ 49-60)

---

response to the MDOC SUMF after the applicable deadline. (Doc. 230). Pursuant to E.D. Mo. L.R. 4.01(E), all facts not addressed in Plaintiff's response are deemed admitted for purposes of this Motion for Summary Judgment.

Corizon Defendants filed Statements of Uncontroverted Material Facts ("Corizon SUMF") along with their Motion for Summary Judgment. (Docs. 201, 207). Plaintiff has responded to certain sections of the Corizon SUMF. (Docs. 233-34). Pursuant to E.D. Mo. L.R. 4.01(E), all facts not addressed in Plaintiff's response are deemed admitted for purposes of this Motion for Summary Judgment.

- Licensed Nurse Practitioner Laurel Davison (n/k/a Raines) (*Id.* at ¶ 17)
- Dr. Alan Weaver (*Id.* at ¶¶ 29-31)
- Dr. Ruanne Stamps (*Id.* at ¶¶ 71-112)
- Dr. Milton Hammerly (*Id.* at ¶¶ 49-60)
- Utilization Management Medical Director ("UMMD") Dr. Mandip Bartels[3] (*Id.* at ¶¶ 16-48)
- Defendants Wilhite, Boley, Cofield, Bredeman, and Willis ("Grievance Defendants") (*Id.* at ¶¶ 72-73)
- Corizon (*Id.* at ¶¶ 9-10)

B. Corizon Defendants – Miscellaneous Claims[4]

    **(1) Americans with Disabilities Act ("ADA") and Rehabilitation Act** (*Id.* at ¶¶ 2, 12, 60): Plaintiff argues that the Corizon Defendants violated Title II of the ADA as well as § 504 of the Rehabilitation Act.

    **(2) Breach of Contract** (*Id.* at ¶ 25): Plaintiff argues that Corizon violated its contract with MDOC by failing to provide adequate medical care.

C. MDOC Defendants

    **(1) Arbitrary and Vague Policies** (*Id.* at ¶¶ 145-179): Plaintiff argues that MDOC policy contains a "loophole" by frequently using the word "should" instead of "shall" in reference to the obligation to provide reasonable accommodations. Plaintiff claims that this problematic policy caused the Corizon Defendants to deny him access to necessary medical care.

    **(2) Deliberate Indifference to Serious Medical Needs** (*Id.* at ¶¶ 199-201): Plaintiff argues that, as a result of the arbitrary and vague policies, MDOC Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

    **(3) ADA and Rehabilitation Act** (*Id.* at ¶¶ 202): Plaintiff argues that he was denied access to services and activities due to his disability. Defendant Lisa Pogue is the Deputy Warden at MCC and the ADA Site Coordinator. (Doc. 196 at ¶¶ 7-8).

    **(4) Missouri State Law Claims** (Doc. 69 at ¶¶ 182-184, 197): Plaintiff argues that the MDOC's offender grievance procedures and other policies do not abide by the requirements of Missouri law.

---

[3] This Court previously dismissed Dr. Bartels pursuant to Plaintiff's claim that Dr. Bartels was no longer the UMMD. (Doc. 173). Corizon subsequently clarified, however, that Dr. Bartels in fact remains the UMMD. (Doc. 179). Dr. Bartels is the appropriate Defendant for Plaintiff's claims.

[4] In Plaintiff's response to the Corizon Defendants' Motion for Summary Judgment, he makes numerous arguments alleging violations of his procedural and substantive due process rights under the Fourteenth Amendment. (Doc. 258 at 68-82). Even construing Plaintiff's SAP liberally, this Court finds that the SAP does not state a claim under the Due Process Clause of the Fourteenth Amendment. Alternatively, the Court finds that any such claim is meritless for the reasons outlined by Corizon Defendants. (Doc. 266 at 14-15).

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 56, a movant is entitled to summary judgment if they can "show that there is no genuine dispute as to any material fact" and they are "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 619 (8th Cir. 1988). The burden of proof is on the moving party and a court should not grant summary judgment unless it is convinced that there is no evidence to sustain a recovery under any circumstances. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The nonmovant, however, "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587-87 (1986)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III.   DISCUSSION

### A.   Corizon Defendants – Medical Claims

Plaintiff alleges deliberate indifference by numerous Corizon Defendants across many medical encounters. Deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 531-32 (8th Cir. 2009) (citing *Estelle*, 429 U.S. 97). To make such a claim, a plaintiff must "make two showings – one objective and one subjective." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017). First, the plaintiff "must prove an objectively serious medical need and that prison officials knew of the need but *deliberately* disregarded it." *Nelson*, 583 F.3d at 531-32 (emphasis added). Second, the plaintiff must show that the defendant was "more than negligent, or even

4

grossly negligent." *Scott v. Morgan*, No. 4:14-CV-01853 JAR, 2016 WL 3971394, at *4 (E.D. Mo. July 25, 2016) (quoting *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015)). The required state of mind for culpability "approach[es] actual intent." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-66 (8th Cir. 2014) (citing *Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8th Cir. 2014)).

Plaintiff's claims of deliberate indifference against the Corizon Defendants can generally be broken into three categories, and the treatment provided by each Corizon Defendant is best understood in the context of these categories. For the reasons described below, a reasonable factfinder could not conclude that any Corizon Defendant was deliberately indifferent to Plaintiff's serious medical needs.

### *Refusal to Provide Second Hearing Aid*

Plaintiff alleges that the denial of a replacement hearing aid for his left ear constitutes deliberate indifference. The second hearing aid difficulties began on March 2016, when Plaintiff reported to Dr. Jones that his hearing aids were not working well, and Dr. Jones acknowledged that Plaintiff had a hard time understanding him. (Doc. 201 at ¶ 26). On May 20, 2016, Dr. Jones prescribed Plaintiff nasal spray for seasonal allergies and montelukast. (*Id.* at ¶ 27). On May 25, 2016, Dr. Jones placed a referral request that Plaintiff's right hearing aid be replaced and noted that the left hearing aid had broken. (*Id.* at ¶ 28). Regional Medical Director Dr. Hammerly, however, did not approve Plaintiff's request for a left hearing aid "because the audiologist documented that the hearing loss was greater in the right ear and did not validate Plaintiff's claim that the left hearing aid needed to be replaced." (*Id.* at ¶ 31). Dr. Hammerly claims he "determined, based upon the documentation and information available to [him] at the time and [his] medical

5

judgment, that a replacement hearing aid for Plaintiff's left ear was not medically necessary." (Doc. 205-2 at ¶ 11).

Plaintiff subsequently filed an Informal Resolution Request asking for the left hearing aid to be replaced. (Doc. 201 at ¶ 34). Defendant Wilhite, Director of Nursing, denied the request and noted that it "was Corizon policy to only provide one hearing aid." (*Id.* at ¶ 35). In an affidavit before this Court, Defendant Wilhite has clarified that the statement as to Corizon policy was "inaccurate" and "[a]s an exception to MDOC Policy D5-5.1, an offender can be provided with a hearing aid for each ear when it is deemed that the use of a second hearing aid would be beneficial at that time." (Doc. 208-1 at ¶¶ 11-12). While there are potential issues with the MDOC policy, as discussed further below, Dr. Hammerly's statements demonstrate that Corizon Defendants relied on their medical judgment in denying Plaintiff's request for a second hearing aid. A reasonable factfinder could also not conclude that Corizon as an entity was deliberately indifferent to Plaintiff's medical needs in denying him a second hearing aid given Corizon's reliance on Dr. Hammerly's medical judgment.

MDOC Defendants claim that Plaintiff, on at least one occasion, stated he did not want a hearing aid for his left ear. (Doc. 196 at ¶ 4(g)). Plaintiff has rejected this claim and instead explained that he was "willing to accept new hearing aids" but believed the left hearing aid "would not be beneficial as long as the ETD [was] left untreated." (Doc. 230 at ¶ 4(g)). Plaintiff's description is consistent with the Corizon SUMF, which also notes that Plaintiff was "willing to accept new hearing aids." (Doc. 201 at ¶ 78(c)). There are certainly instances, however, where Plaintiff refused a second hearing aid. For example, Plaintiff occasionally refused to accept a new hearing aid because it was too loud or had high-pitched feedback. (*Id.* at ¶¶ 79, 81, 85). Corizon

Defendants sent Plaintiff's hearing aid to the manufacturer for repair on April 16, 2019 and several other times. (*Id.* at ¶ 83; Doc. 256 at 33).[5]

A reasonable factfinder could not conclude that any Corizon Defendant exercised deliberate indifference to Plaintiff's serious medical needs by denying him a second hearing aid. Instead, the record reflects that Dr. Hammerly reviewed the record and, in his medical judgment, determined that a second hearing aid was not medically warranted based on the audiologist's report. Defendants do not deny that Plaintiff had serious medical needs,[6] and a reasonable factfinder could conclude that Plaintiff should have been provided a second hearing aid. There is simply no basis, however, on which a reasonable factfinder could conclude that either Dr. Hammerly or Nurse Wilhite's mental states were "akin to criminal recklessness," or that the medical treatment decisions were more than grossly negligent *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (internal quotation omitted).

The fact that Dr. Hammerly disagreed with Dr. Jones' assessment, moreover, does not demonstrate deliberate indifference. *See Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) ("Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference."); *Taylor v. Turner*, 884 F.2d 1088, 1090 (8th Cir. 1989) (explaining that medical

---

[5] Plaintiff briefly alleges that Defendants "were indifferent to Plaintiff's expressed hearing accommodation needs and allowed a vendor to dictate the limitations of hearing aid adjustments." (Doc. 256 at 33). Defendants repeatedly contacted the hearing aid vendor and attempted to address the volume issues with Plaintiff's hearing aids. The fact that the vendor had difficulty adjusting the hearing aids to meet Plaintiff's needs cannot possibly establish deliberate indifference on behalf of any Defendant.

[6] Defendants effectively acknowledge that loss of hearing can constitute a serious medical need for Eighth Amendment purposes. This recognition is consistent with other courts' analysis of the issue. *See Barnett v. Missouri Dep't Corr.*, No. 4:14-CV-01744 ERW, 2014 WL 5421220, at *2 (E.D. Mo. Oct. 23, 2014) (collecting cases).

The Court notes, however, that Plaintiff retained a personal hearing aid for his left ear for much of the time during which he was denied a second hearing aid. Plaintiff states that he was "forced to use his personal hearing aid which still worked but was very fragile." (Doc. 256 at 50). That Plaintiff retained two hearing aids for at least some time after the denial of the second hearing aid certainly limited the potential harm to Plaintiff. It certainly cannot be said that any Corizon Defendant was deliberately indifferent for failing to provide a second hearing aid during the time in which Plaintiff's left hearing aid remained functional. The record is unclear as to when, if ever, Plaintiff's second hearing ceased functioning altogether or became unusable.

staff are entitled to exercise their professional judgment in making medical decisions). Defendants received consultations from an audiologist, frequently assessed Plaintiff's hearing impairments, and made a medical judgment as to the necessity of a second hearing aid. The ultimate decision to deny the second hearing aid simply does not rise to the level of cruel and unusual punishment in violation of the Eighth Amendment.

### *Battery and Tube Replacement*

Plaintiff alleges that Defendants exercised deliberate indifference by refusing to provide adequate battery and tube replacements for his hearing aids. On August 1, 2016, Plaintiff met with Nurse Patricia Dejonge and requested a new battery and tube for his hearing aid. (Doc. 201 at ¶ 33). After Plaintiff filed a grievance, he was issued a new tube for his hearing aid on September 12, 2016. (*Id.* at ¶¶ 35-36; Doc. 205 at 21). On November 16, 2017, Plaintiff claimed his tube was "bent" and requested a new tube from Nurse Hargis who denied the request and explained that Plaintiff needed to clean his hearing aid. (*Id.* at ¶ 57). Plaintiff filed another grievance seeking a tube replacement which was denied as a repetitive request. (*Id.* at ¶¶ 58-59). In denying Plaintiff's appeal of the grievance denial, Health Services Administrator Bonnie Boley explained that Plaintiff "want[s] a specific tubing which we cannot get" but as to the "tubing that we can get, [MCC] will give you whenever you need it by request." (Doc. 1-2 at 37). On September 20, 2019, Plaintiff again complained that his left hearing aid tube was not functioning properly, and this complaint was forwarded to the administration. (Doc. 201 at ¶ 95). On March 17, 2020, Plaintiff was again issued a new piece of plastic tubing as well as two new hearing aid batteries. (*Id.* at ¶ 99). The record reflects that Plaintiff received standard replacement tubing on multiple occasions. (Doc. 244 at ¶¶ 16-17; Doc. 258 at 111-12).

8

Plaintiff does not allege that Defendants completely denied him access to any replacement tubes or hearing aids. Instead, Plaintiff argues that he did not receive the "correct, standard replacement tubes . . . as he received while at SCCC." (Doc. 256 at 52). Plaintiff was informed he could contact the manufacturer himself if he wanted specific tubes other than those offered by Defendants. (Doc. 201 at ¶ 33). Failure to provide the precise type of tube requested by Plaintiff does not rise to the level of deliberate indifference. The Eighth Circuit has clearly held that prisoners "do not have a constitutional right to any particular type of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996); *see also Roebuck v. Glass*, No. 4:18-CV-01498, 2018 WL 6589926, at *2 (E.D. Mo. Dec. 14, 2018) (finding plaintiff was "demanding his own brand of treatment"). Plaintiff has provided no medical evidence that the tubes offered by Defendants were fundamentally inadequate. *See Scott v. Benson*, 151 F. Supp. 3d 931, 948 (N.D. Iowa 2015) (finding no deliberate indifference where plaintiff was provided manual wheelchair instead of electric). Plaintiff's concerns as to his hearing aid tubing and batteries were consistently addressed even if Plaintiff was not always entirely satisfied with the result.

### *Treatment of ETD and Other Ear, Nose, and Throat ("ENT") Issues*

Plaintiff's treatment for ETD and other ENT issues followed a standard pattern. Plaintiff requests treatment based on his symptoms, a Corizon Defendant provides treatment, and some time later Plaintiff returns indicating that the treatment did not work and his symptoms persist. Plaintiff frequently disagreed with the medical judgment of the Corizon Defendants and external specialists. But Corizon Defendants' failure to cure Plaintiff's ETD and other problems does not amount to deliberate indifference. Instead, the record consistently reflects Plaintiff's access to substantial care, numerous treatment options, and referrals to outside specialists when appropriate.

A reasonable factfinder could not conclude that this amounts to deliberate indifference to Plaintiff's serious medical needs.

On March 4, 2013, Plaintiff expressed to Dr. Scott that he had a plugged feeling in his ears. (Doc. 201 at ¶ 10).[7] Dr. Scott recommended the Valsalva maneuver (blowing air against the closed airway to relieve pressure) and prescribed Afrin spray but ultimately concluded there was "little treatment" available for the particular issue of popping and blockage sensation. (*Id.* at ¶¶ 10-15). Dr. Scott also prescribed an antihistamine. (*Id.* at ¶ 11). Over three years later, now at MCC, Plaintiff met with Nurse Davison regarding a popping sensation in his ear, and Nurse Davison ordered a six-month trial of Loratadine. (*Id.* at ¶ 39). On February 1, 2017, Dr. Weaver addressed Plaintiff's ongoing issues and noted a history of ETD, though Dr. Weaver has stated that Plaintiff did not suffer from chronic ETD and he did not make a referral to a specialist. (*Id.* at ¶¶ 46-48; Doc. 205-4 at ¶ 18). Dr. Weaver has also expressed his opinion that "most cases of ETD are not serious, usually last a short time, and can be treated with nose sprays, antihistamines, and/or

---

[7] Corizon Defendants argue that Plaintiff's claims against Dr. Scott are barred by the applicable statute of limitations. (Doc. 204 at 10). Plaintiff last saw Dr. Scott on July 25, 2013. (Doc. 201 at ¶ 16). As this Court has previously stated, "Section 1983 claims are analogous to personal injury claims and are subject to Missouri's five-year statute of limitations." (Doc. 9 at 4 (citing *Sulik v. Taney Cty., Mo.*, 393 F.3d 765, 766-67 (8th Cir. 2005); Mo. Rev. Stat. § 516.120(4)). Plaintiff filed his initial Complaint in this Court on May 30, 2018, but Dr. Scott was not named as a defendant until the First Amended Complaint filed on April 17, 2019. (Doc. 62). Dr. Scott was briefly mentioned in the original Complaint but not named as a defendant. (Doc. 1 at ¶ 180).

The relation back doctrine is governed by Fed. R. Civ. P. 15(c). An amendment which adds a defendant relates back if (1) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out – or attempted to be set out – in the original pleading; (2) the party to be brought in by the amendment received such notice of the action that it will not be prejudiced in defending on the merits; (3) the party knew or should have known that the action would have been brought against it but for a mistake concerning the proper party's identity; and (4) the second and third of these requirements were met within the period provided by Rule 4(m) for serving the summons and complaint. *Lee v. Airgas Mid-South, Inc.*, 793 F.3d 894, 897 (8th Cir. 2015).

Plaintiff's initial Complaint concerns the same conduct at issue in the SAP and mentions Dr. Scott by name, placing Dr. Scott on reasonable notice that he may become a defendant in the case. However, there was no error regarding Dr. Scott's identity, and Dr. Scott was not formally named as a defendant until April 17, 2019, more than 120 days after the initial Complaint was filed. Therefore, the third and fourth requirements of the test identified in *Airgas Mid-South, Inc.* are not met. Accordingly, summary judgment in favor of Dr. Scott is also warranted because the claims fall outside the statute of limitations.

decongestants." (Doc. 205-4 at ¶ 17). Dr. Weaver also treated Plaintiff for unrelated foot issues and Plaintiff did not voice any complaints about his ears at that time. (Doc. 201 at ¶ 52).

On August 30, 2017, Plaintiff visited Dr. Aguilera, who requested an off-site ENT consultation. (*Id.* at ¶ 53).[8] UMMD Dr. Bartels denied the request for an off-site evaluation and instead recommended medical management and re-evaluation. (*Id.* at ¶ 54). Dr. Aguilera accordingly provided Plaintiff a decongestive, antihistamine, and nasal steroid. (*Id.* at ¶ 55). On January 5, 2018, Dr. Aguilera placed another referral request for Plaintiff to visit an ENT, noting that symptoms continued to persist, but UMMD Dr. Bartels deferred the referral pending an updated audiogram test. (*Id.* at ¶¶ 62). After the audiogram test, UMMD Dr. Bartels approved Dr. Aguilera's request for an ENT evaluation. (*Id.* at ¶ 67). Dr. Reese Thompson, an external ENT specialist, met with Plaintiff on May 4, 2018 and recommended a cochlear implant or, if an implant was not available under Corizon policy, continued use of hearing aids. (*Id.* at ¶ 70). Plaintiff has stated that he "disagrees with Dr. Thompson's diagnosis" and "believes he has viable claims against Dr. Thompson for deliberate indifference and intentional fraud." (Doc. 233 at 37).

Shortly after his consultation with Dr. Thompson, Plaintiff met with Dr. Stamps and stated that he continued to experience air pressure and needed to constantly perform the Valsalva maneuver. (Doc. 201 at ¶ 73). Dr. Stamps reviewed Dr. Thompson's report and prescribed Plaintiff a two-week trial of Flonase. (*Id.* at ¶ 73(c)). Two days later, Plaintiff filed a grievance alleging that he was not receiving treatment for ETD and instead had been placed on a constant cycle of allergy medications. (*Id.* at ¶ 76). After obtaining an MRI for Plaintiff, Dr. Stamps referred Plaintiff to an external ENT, and Plaintiff visited Dr. Thompson again on June 28, 2019. (*Id.* at ¶ 87, 90).[9] Dr.

---

[8] Dr. Aguilera was originally named in this suit but this Court has since granted Dr. Aguilera judgment on the pleadings. (Doc. 177).

[9] Plaintiff admits that Dr. Stamps "may not have literally ignored [his] medical needs." (Doc. 256 at 47).

Thompson concluded that there was no evidence of ETD and no medical intervention which could maintain positive ear pressure except for a cochlear implant. (*Id.* at ¶ 90). Plaintiff has repeatedly stated that he disagrees with Dr. Thompson's diagnosis. (*Id.* at ¶¶ 92, 94).

Corizon Defendants argue that Plaintiff cannot demonstrate deliberate indifference because "he was properly and regularly assessed for his complaints of ETD." (Doc. 204 at 10). The fact that some medical care was provided is clearly insufficient to defeat a claim of deliberate indifference. But the record here clearly reflects repeated attempts by multiple Corizon Defendants to treat Plaintiff's medical issues in a prompt and reasonable manner. Corizon Defendants tried different medications, suggested alleviating maneuvers, and made referrals when medically indicated. Plaintiff's argument is essentially that Corizon Defendants "provided ineffective medica[l] treatment for his ETD" because no treatment ultimately worked. (Doc. 256 at 30). But even "[n]egligent misdiagnosis does not create a cognizable claim under § 1983." *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009). The question of whether "additional diagnostic techniques or forms of treatment [are] indicated is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Corizon Defendants made good faith attempts employing various strategies to address Plaintiff's medical needs; a reasonable factfinder could not conclude that they were more than grossly negligent.

One particular issue, the delay in referring Plaintiff to a specialist, merits further attention. UMMD Dr. Bartels twice deferred Dr. Aguilera's recommendation that Plaintiff visit a specialist, first to attempt medication management and second to obtain an updated audiogram test. As a result, roughly nine months expired between Dr. Aguilera's referral and Plaintiff's first visit with Dr. Thompson. Delayed referral to a specialist can, in certain circumstances, amount to deliberate indifference. *See Olson v. Clarke*, 112 F.3d 514, 514 (8th Cir. 1997) (per curiam).

12

Plaintiff has not plausibly alleged, however, that the delay here was caused by deliberate indifference or resulted in any additional injury. Corizon Defendants did not simply ignore Plaintiff's medical issues; instead, UMMD Dr. Bartels reviewed the record and determined that medication management was indicated before referral to an ENT specialist. The record suggests this delay was warranted given the ENT specialist only suggested continued use of hearing aids (though Plaintiff disagrees with this finding). (Doc. 201 at ¶ 70). An earlier referral to Dr. Thompson would not have changed Plaintiff's treatment plan whatsoever. *See Crowley v. Hedgepath*, 109 F.3d 500, 502 (8th Cir. 1997) (allegation that delay had adverse effect on prognosis is element of deliberate indifference claim). "Although the prison doctors may not have proceeded from their initial diagnosis to their referral to a specialist as quickly as hindsight perhaps allows us to think they should have, their actions were not deliberately indifferent. The doctors made efforts to cure the problem in a reasonable and sensible manner." *Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997).

### *Grievance Claims*[10]

Liberally construed, Plaintiff's SAP alleges that the Grievance Defendants were deliberately indifferent to his serious medical needs because they wrongfully denied his grievance requests regarding a second hearing aid, tube replacement, and treatment of his ETD. MCC has a three-step grievance process: an inmate must first file an Informal Resolution Request ("IRR"), which is handled by Defendant Wilhite for medical issues. If still dissatisfied, an inmate can file an Offender Grievance, which in this case was addressed by Defendant Boley as Health Services Administrator at MCC. Finally, an inmate can file an Offender Grievance Appeal; Defendant

---

[10] Though Plaintiff does not appear to make such an argument, the Court notes that any alleged failure by the Corizon Defendants to comply with its own grievance procedures does not amount to a constitutional violation in and of itself. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

13

Cofield generally drafted responses to such appeals through her position as Director of Operations, Constituent Services. Defendant Bredeman reviewed and signed off on responses to Offender Grievance Appeals in his respective positions as Associate Regional Medical Director ("ARMD") and Regional Medical Director ("RMD"). (Doc. 207 at ¶¶ 6-15).

Plaintiff filed three grievances relevant to this case. On August 4, 2016, Plaintiff an IRR numbered MCC 16-722 seeking replacement of his second hearing aid, new tubing, and batteries as needed. (Doc. 207 at ¶ 16). Defendant Wilhite responded that "[i]t is Corizon Health to only provide one hearing aid" but stated replacement tubing would be ordered. (Doc. 208 at 12). Defendant Wilhite also noted that Plaintiff had his own hearing aid for his left ear, which was partially broken, and she would "discuss with the provider to assess this device and evaluate for possible repair or replacement." (*Id.*). In response, Plaintiff filed Offender Grievance numbered MCC 16-722 on September 1, 2016. (Doc. 207 at ¶ 18). Defendant Boley issued a further response on September 28, 2016 stating that "Dr. Jones entered a referral for hearing aids and approval was made for 1 hearing aid per the policy of Corizonhealth." (Doc. 208-5). Defendant Boley also explained that Corizon "can give [Plaintiff] new tubing or batteries by request through sick call when you need them." (*Id.*).

Plaintiff then filed an Offender Grievance Appeal. According to Defendant Bredeman's sworn affidavit before this Court, Plaintiff wrote his appeal on October 3, 2016, but it was not properly filed until October 11, 2016, beyond the seven-day deadline established by MDOC policy. (Doc. 208-4 at ¶ 17). Accordingly, the appeal was denied as abandoned. (*Id.*). Plaintiff vehemently argues that this was in error and the proper filing date is October 3, 2016. (Doc. 234 at ¶ 19). When Plaintiff attempted to file another grievance regarding similar issues (MCC 17-1178), the grievance was denied as duplicative at each stage. (Doc. 207 at ¶¶ 22-28). Plaintiff also filed a grievance related to the treatment of his ETD (MCC 18-475) which was denied at each of

14

the three grievance levels. (*Id.* at ¶¶ 29-34). Corizon Defendants repeatedly stated that Plaintiff had been provided access to both an Audiologist and ENT specialist. (*Id.*).

Corizon Defendants argue that because Plaintiff abandoned his appeal he has failed to exhaust his administrative remedies and cannot bring any claim related to the second hearing aid, batteries, or tubing. (Doc. 202 at 10). The Court disagrees. Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Due to the PLRA, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Exhaustion under the PLRA is defined by the prison's grievance procedures. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). For an MDOC inmate, exhaustion requires filing of an IRR, Offender Grievance, and Offender Grievance Appeal. *See Foulk v. Charrier*, 262 F.3d 687, 694 (8th Cir. 2001).

By Corizon Defendants' own admission, the reason Plaintiff's appeal of MCC 16-722 was not timely was because he forgot to sign the appeal document. As a result, the document was not technically filed until October 11, 2016, after the seven-day deadline expired. (Doc. 266 at 3-4). This Court is not inclined to bar Plaintiff's claims given the factual uncertainty as to the proper filing date of Plaintiff's appeal, but recognizes that prisoners may be forced to comply with unforgiving deadlines and other procedural requirements. *Woodford*, 548 U.S. at 103.

It is clear that Plaintiff exhausted his appeal of MCC 17-1178, though Corizon Defendants argue that this appeal was denied as duplicative at each stage. (Doc. 207 at ¶¶ 22-28). Upon review of the record, however, Corizon Defendants substantively addressed Plaintiff's grievances. For example, when responding to the Offender Grievance for MCC 17-1178, Defendant Boley determined the grievance was duplicative but also discussed that Plaintiff "want[s] a specific

15

tubing which we cannot get" but will provide the available tubing whenever requested through sick call. (Doc. 208 at 8). Similarly, the Offender Grievance Appeal response from Defendants Cofield and Bredeman concluded that Plaintiff's "record shows appropriate care and treatment for your medical/mental health issues." (*Id.* at 7). "[A]ll circuits . . . have concluded that the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012). The benefits of exhaustion are fully realized in Plaintiff's case "even if the decision-maker could have declined to reach the merits because of one or more procedural deficiencies." *Id.* Accordingly, the Court concludes that the exhaustion requirement of the PLRA has been met.

A reasonable factfinder could not conclude, however, that any of the Grievance Defendants exercised deliberate indifference to Plaintiff's serious medical needs. Instead, the record consistently reflects appropriate responses from the Grievance Defendants which consider Plaintiff's medical needs and advise Plaintiff as to his medical treatment options (*e.g.*, obtaining replacement tubing at sick call). Plaintiff relies substantially on *Walker v. Babich* for the proposition that the Grievance Defendants failed to properly inquire into his medical history before making a determination. (Doc. 257 at 32 (citing No. 2:16-CV-18 PLC, 2018 WL 4207131 (E.D. Mo. Sept. 4, 2018)).

It is critical to remember that "[t]he denial of grievances, in and of itself, cannot support a substantive constitutional claim." *Haley v. CMS*, No. 1:09-CV-144 SNLJ, 2012 WL 4108924, at *3 (E.D. Mo. Sept. 19, 2012) (citing *Lomholt v. Holder*, 287 F.3d 683 (8th Cir. 2002)). The appropriate constitutional claim, therefore, is a failure to investigate or treat Plaintiff's serious medical needs. In *Babich*, the ARMD appeared to have "approved the denial of Plaintiff's grievance appeal without . . . even reading Plaintiff's grievance or reviewing his medical records." *Babich*, 2018 WL 4207131, at *11. There is no evidence in the record, beyond Plaintiff's bare

16

assertions, that any of the Grievance Defendants failed to review Plaintiff's medical records. For example, as to MCC 18-475, the Offender Grievance Appeal Response discusses Plaintiff's relevant medical history. (Doc. 208-7). While the grievance responses are not extremely detailed, a reasonable factfinder could not conclude that the Grievance Defendants exercised deliberate indifference. Ultimately, Plaintiff's claim amounts to an allegation that because he disagreed with the Grievance Defendants' determinations, they must not have carefully reviewed the record and were accordingly deliberately indifferent. Based on the record before this Court, and despite Plaintiff's disagreement with the ultimate result, a reasonable factfinder could not find that the Grievance Defendants were deliberately indifferent to Plaintiff's serious medical needs.

From denial of a second hearing aid to challenges with replacement tubes to treatment of ETD and other ENT issues, the record reflects repeated attempts by Corizon Defendants to provide Plaintiff with reasonable medical care. Plaintiff was prescribed various medications, visited with audiologists and an external ENT specialist, and was promptly provided access to medical professionals upon request. Such care was not always perfect, and it does not appear to have resolved Plaintiff's ongoing medical issues. But deliberate indifference requires more even than gross negligence, and there is no evidence in the record to support a finding that Corizon Defendants were more than grossly negligent. Accordingly, a reasonable factfinder could not conclude that the Corizon Defendants were deliberately indifferent to Plaintiff's serious medical needs, and summary judgment as to the medical claims against the Corizon Defendants is warranted.

B.  Corizon Defendants – Miscellaneous Claims

**(1) ADA and Rehabilitation Act**

Corizon Defendants cannot be held liable under either the ADA or Rehabilitation Act. Title II of the ADA only applies to "public entities." 42 U.S.C. § 12132. The term "public entities" does not include individuals, and a "private contractor does not become a 'public entity' under Title II merely by contracting with a governmental entity to provide governmental services." *Turner v. Mull*, 997 F. Supp. 2d 985, 997 (E.D. Mo. 2014) (specifically finding that Corizon is not a public entity under the ADA). Corizon Defendants are also not subject to liability under the Rehabilitation Act, which applies similar remedies as the ADA but also requires that the defendant be a recipient of federal funding. Courts have consistently found that Corizon and its employees are not subject to the Rehabilitation Act. *See Aldridge v. Hill*, No. 1:18-CV-259 CAS, 2019 WL 2211056, at *5 (E.D. Mo. May 22, 2019); *Roberts v. Lombardi*, No. 1:12-CV-134 SNLJ, 2014 WL 4230894, at *5-6 (E.D. Mo. Aug. 27, 2014). Finally, Plaintiff's ADA and Rehabilitation Act claims against Corizon Defendants fail because such claims "cannot be based on medical treatment decisions." *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam). Therefore, Plaintiff cannot make a successful ADA or Rehabilitation Act claim against the Corizon Defendants as a matter of law. In response, Plaintiff essentially acknowledges that MDOC Defendants are the proper target of his ADA and Rehabilitation Act claims. (Doc. 254 at 54-55)

**(2) Breach of Contract**

Plaintiff argues that Corizon Defendants are liable to Plaintiff for breaching their contract with MDOC by failing to provide adequate medical care. (Doc. 69 at ¶ 112). Under Missouri law, "[o]nly the parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract. To be bound as a third-party beneficiary, the terms of the contract must

clearly express intent to benefit that party." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 971 (8th Cir. 2015) (quoting *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. 2007)). Where a contract does not expressly identify third-party beneficiaries, there is a "strong presumption that the third party is not a beneficiary." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 135 (Mo. banc 2007) (quoting *Netco, Inc. v. Dunn*, 194 S.W.3d 353, 358 (Mo. banc 2006)). In *Moore v. Corizon, LLC*, the court addressed a nearly identical claim and found that the plaintiff had "no standing to assert a claim under the contract, which is solely between Corizon and the MDOC." No. 4:15-CV-597 RLW, 2015 WL 5813231, at *4 (E.D. Mo. Oct. 5, 2015). Plaintiff now "concedes that he has no standing to assert a claim under the contract." (Doc. 258 at 62). Accordingly, summary judgment will be granted in favor of the Corizon Defendants on Plaintiff's breach of contract claim.

### C.  MDOC Defendants

#### *Qualified Immunity*

MDOC Defendants make two arguments which are applicable to virtually all of the claims against them. First, the MDOC Defendants contend that they are entitled to qualified immunity. (Doc. 197 at 5). "Qualified immunity is a defense only against a claim in one's individual capacity." *Bankhead v. Knickrehm*, 360 F.3d 839, 844 (8th Cir. 2004). Therefore, the qualified immunity defense is inapplicable to Plaintiff's claims against MDOC Defendants in their official capacities. "To survive a challenge based on qualified immunity, a plaintiff must show that the defendants violated a prisoner's [statutory or] constitutional right and the [statutory or] constitutional right was clearly established at the time of the violation." *Letterman v. Does*, 789 F.3d 856, 861 (8th Cir. 2015) (citing *Jones v. McNeese*, 746 F.3d 887, 894 (8th Cir. 2014)); *see also Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Plaintiff argues that qualified immunity does not protect the MDOC Defendants because they knowingly violated his clearly established statutory

19

and constitutional rights. Evidently, whether qualified immunity applies turns on whether a reasonable factfinder could conclude that Plaintiff's statutory or constitutional rights were violated. Because no Defendant was deliberately indifferent to Plaintiff's serious medical needs, there is no reasonable argument that the MDOC Defendants knowingly violated Plaintiff's constitutional rights. Accordingly, MDOC Defendants are entitled to qualified immunity on all deliberate indifference claims against them in their individual capacities. The application of qualified immunity to Plaintiff's claims under the ADA and Rehabilitation Act is discussed further below.

### *Eleventh Amendment*

MDOC Defendants also argue that the Eleventh Amendment and Prison Litigation Reform Act ("PLRA") bar Plaintiff's claim for money damages. 42 U.S.C. § 1997e(c)(1). The Eleventh Amendment clearly establishes that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Employees v. Missouri Public Health & Welfare Dep't*, 411 U.S. 279, 280 (1973); *see also Reynolds v. Dormire*, 636 F.3d 976 (8th Cir. 2011). Plaintiff responds that Title II of the ADA "abrogates state sovereign immunity insofar as it creates a private cause of action for conduct that actually violates the Fourteenth Amendment." (Doc. 220-3 at 17). *See United States v. Georgia*, 546 U.S. 151 (2006). Plaintiff accurately describes the Supreme Court's holding in *United States v. Georgia*, but only a portion of Plaintiff's claims arise under Title II of the ADA. Accordingly, this Court finds that the Eleventh Amendment bars all of Plaintiff's claims for money damages against the MDOC

Defendants in their official capacities with the exception of those claims arising under Title II of the ADA and the Rehabilitation Act, discussed further below.[11]

Plaintiff's SAP explicitly states that all Defendants "are being sued in their Official and Individual Capacities." (Doc. 69 at 2). This is nearly identical to the language recommended by the Eighth Circuit. *See Rollins by Agosta v. Farmer*, 731 F.2d 533, 536 n.3 (8th Cir. 1984). "[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Artis v. Francis Howell North Bound Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998). Plaintiff has clearly met this burden. Because the Eleventh Amendment does not bar compensatory damages in individual-capacity suits, the claims against the MDOC Defendants in their individual capacities do not fail on the basis of sovereign immunity. *See Nix v. Norman*, 879 F.2d 429, 433 n.3 (8th Cir. 1989); *see also Hafer v. Melo*, 502 U.S. 21, 25-26 (1991) (describing difference between official and personal capacity suits).

To summarize, as to the deliberate indifference claims, the qualified immunity defense bars Plaintiff's claims against MDOC Defendants in their individual capacities because Plaintiff has not demonstrated a clear violation of a statutory or constitutional right. The Eleventh Amendment also bars recovery of damages against MDOC Defendants in their official capacities. As discussed further below, claims arising under the ADA and Rehabilitation Act involve unique considerations with regard to qualified and sovereign immunity.

---

[11] The Court also notes, as argued by the MDOC Defendants, that state officials acting in their official capacity are not "persons" under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Plaintiff has not responded to this argument.

### (1) Deliberate Indifference to Serious Medical Needs

Plaintiff argues that, as a result of the hearing aid policy discussed above, the MDOC Defendants were deliberately indifferent to Plaintiff's hearing impairments. (Doc. 69 at ¶¶ 119-201).[12] In order to show deliberate indifference, Plaintiff must demonstrate that the MDOC Defendants knew of but deliberately disregarded his serious medical needs. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 531-32 (8th Cir. 2009) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). MDOC Defendants note that Plaintiff received substantial medical services and they appropriately relied on the opinion of the Corizon medical professionals. (Doc. 197 at 12-13). Plaintiff responds by claiming that "the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment." (Doc. 220-23 at 24 (quoting *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989)).

"In a § 1983 case, an official 'is only liable for his . . . own misconduct" and is not 'accountable for the misdeeds of [his] agents' under a theory such as respondeat superior or supervisor liability." *Whitstone v. Stone County Jail*, 602 F.3d 920, 928 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Prison supervisors can accordingly only be held liable when they are personally involved in a constitutional violation or "where their corrective inaction amounts to deliberate indifference to or tacit authorization of their subordinates' violative practices." *Scott v. Morgan*, No. 4:14-CV-01853 JAR, 2016 WL 3971394, at *4 (E.D. Mo. July 25, 2016) (citing *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)). Because this Court has determined that the Corizon medical providers were not deliberately indifferent to Plaintiff's

---

[12] Plaintiff references both the Eighth and Fourteenth Amendments in his SAP. (Doc. 69 at ¶ 70). Generally, only a pretrial detainee's claim of deliberate indifference arises under the Fourteenth Amendment. *See Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). As a result, only the Eighth Amendment applies to Plaintiff's claims. Whether the Eighth or Fourteenth Amendment applies is immaterial given a "detainee's Fourteenth Amendment claim of deliberate indifference is analyzed under the deliberate indifference standard for an Eighth Amendment violation." *Kitchen v. Miller*, 343 F. Supp. 2d 820, 823 (E.D. Mo. 2004).

serious medical needs, there is no basis to find that the MDOC Defendants tacitly authorized any violative practices or that their inaction amounted to deliberate indifference.

### (2) Arbitrary and Vague Policies

Plaintiff argues that the MDOC enacted "policies and procedures that contain arbitrary and vague language which . . . caused Plaintiff to be denied reasonable accommodations for his serious hearing impairment." (Doc. 69 at ¶ 145).[13] Plaintiff specifically takes issue with the use of "should" instead of "shall" in various MDOC Policies. Policy D5-5(I) states, for example:

> The programs and services provided to offenders by this department or contracted services *should* ensure accessibility and usability by qualified offenders in the most integrated setting. The department *should* make reasonable accommodations or modifications *should* be made to existing policies and procedures to allow qualified offenders with disabilities the same opportunity as offenders who are not disabled . . . . The department *should* furnish appropriate auxiliary aids and services when necessary to afford deaf and hard of hearing offenders an equal opportunity to participate in and enjoy the benefits of a service, program or activity conducted by the department. (Doc. 196-6 (emphasis added)).

According to Plaintiff, by using "should" MDOC "creates a loophole" because it does not technically mandate that MDOC officials ensure accessibility. (Doc. 69 at ¶ 156). This language allegedly resulted in the denial of necessary medical care.

MDOC Defendants first contend that Plaintiff has not exhausted this claim as required to proceed under the PLRA. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 211 (2007). MDOC Defendants argue that Plaintiff filed a grievance based on his receipt of only one hearing aid but

---

[13] As a matter of clarification, the Court recognizes that any alleged failure by the MDOC Defendants to comply with its own internal procedural requirements does not amount to a constitutional violation. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

did not discuss any issues with the MDOC policies. (Doc. 197 at 12). This Court is not aware of any applicable precedent, and MDOC Defendants cite none, as to whether the PLRA requires that a prisoner exhaust each specific argument made in furtherance of the overall cause of action, rather than the cause of action as a whole. The thrust of Plaintiff's claim as to the MDOC policy is that it resulted in his being denied reasonable accommodations. (Doc. 69 at ¶ 191). The PLRA, meanwhile, requires that the "action" be exhausted. 42 U.S.C. § 1997e(a). Though Plaintiff may not have mentioned his specific concerns with the prison policy resulting in this denial during his grievance proceedings, this Court is not persuaded that Plaintiff has failed to exhaust his administrative remedies.

While Plaintiff has sufficiently exhausted this claim, a reasonable factfinder could not conclude that the policy is unconstitutionally vague or arbitrary.  This Court is not aware of any precedent suggesting that the use of the word "should" in reference to statutorily mandated obligations renders a policy unconstitutionally vague or arbitrary. As MDOC Defendants note, moreover, MDOC Policy D5-5.1 does provide that deaf or hard of hearing offenders "*shall* be provided appropriate auxiliary aids or services that may be necessary to facilitate effective participation in programs, activities and services." (Doc. 196-4 at 4). Plaintiff has cited no evidence suggesting that he was denied reasonable accommodations specifically because the word "should" is used instead of "shall" in the policy. Even if the policy is inartfully drafted, it is not unconstitutionally vague or arbitrary as a matter of law.

### (3) ADA and Rehabilitation Act

Plaintiff alleges that MDOC Defendants violated Title II of the ADA and § 504 of the Rehabilitation Act by denying Plaintiff access to programs, services and activities. (Doc. 69 at ¶ 202). At the outset, the Court notes that Plaintiff cannot make a claim against Defendant Pogue in

her individual capacity under either Title II of the ADA or § 504 of the Rehabilitation Act. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) ("[Public entities], as it is defined with the statute, does not include individuals."); *McDonald v. Weissenborn*, No. 4:11-CV-768 MLM, 2011 WL 3319427, at *3 (E.D. Mo. Aug. 1, 2011) ("Section 504 of the Rehabilitation Act does not impose liability on individuals.").[14]

A plaintiff can, however, bring claims against individual defendants in their official capacities for prospective injunctive relief under Title II of the ADA.[15] *Randolph v. Rogers*, 253 F.3d 342 (8th Cir. 2001) ("*Ex parte Young* simply permits an injunction against a state official in his official capacity to stop an ongoing violation of federal law."). MDOC and MCC could technically be subject to damages under the ADA because "Title II validly abrogates state sovereign immunity," but only in limited circumstances not applicable here. *Wright v. Missouri Dep't of Health*, No. 4:18-CV-1981 RWS, 2019 WL 2085417, at *2 (E.D. Mo. May 13, 2019) (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)); *see* 42 U.S.C. § 12202.[16] MDOC and MCC have, however, potentially waived sovereign immunity under the Rehabilitation Act by accepting federal funds. *Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 635 (8th Cir. 2014) (per

---

[14]  If the ADA or Rehabilitation Act did apply to individuals in their individual capacity, the qualified immunity defense would be available. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998).

[15] Plaintiff has explicitly requested certain forms of injunctive relief. (Doc. 69 at 60-61).

[16] Title II only abrogates state sovereign immunity and permits an award of damages in certain circumstances, namely when conduct "*actually* violates the Fourteenth Amendment." *Georgia*, 546 U.S. at 159 (emphasis in original). The Eighth Circuit has clarified that the scope of Title II's abrogation extends somewhat beyond claims arising under the Fourteenth Amendment. *Lors v. Dean*, 746 F.3d 857, 864 (8th Cir. 2014) (recognizing that sovereign immunity may be abrogated for conduct violating Title II but not Fourteenth Amendment).

The key question is whether Congress' purported abrogation of sovereign immunity as to MDOC Defendants' class of conduct is "nevertheless valid" despite it not reaching the level of a Fourteenth Amendment violation. Suits implicating access to judicial services are another example of where Title II has been found to abrogate the Eleventh Amendment. *See Tennessee v. Lane*, 541 U.S. 509 (2004). This Court finds that Plaintiff has not alleged denial of access to any service implicating fundamental rights; accordingly, the Eleventh Amendment has not been abrogated, and damages are not available to Plaintiff on his ADA claim.

curiam).[17] "Money damages are available under § 504" of the Rehabilitation Act. *Rodgers v. Magnet Cove Pub. Sch.*, 34 F.3d 642, 645 (8th Cir. 1994); *see also Arlt v. Missouri Dep't of Corr.*, 229 F. Supp. 2d 938, 943 (E.D. Mo. Sept. 17, 2002) ("Eleventh Amendment immunity does not apply to plaintiff's Rehabilitation Act claim for damages and equitable relief against MDOC."). Therefore, Plaintiff can obtain injunctive relief under both statutes but can seek damages only under the Rehabilitation Act.

Title II of the ADA prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of services, programs, or activities of a public entity. *Randolph v. Rogers*, 170 F.3d 850, 857 (8th Cir. 1999). A qualified individual with a disability means an "individual with a disability who . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). For all intents and purposes, and with the exception of its federal funding requirement, the Rehabilitation Act is "similar in substance" to the ADA and "cases interpreting either are applicable and interchangeable." *Randolph*, 170 F.3d at 858 (quoting *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998)). To establish a prima facie case of discrimination under the ADA, Plaintiff must show "(1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination based upon disability." *Id.* (citing 42 U.S.C. § 12131 *et seq.*).

MDOC Defendants only make two arguments on this issue in their Motion for Summary Judgment.[18] MDOC Defendants allege that Plaintiff was "offered two new hearing aids for his

---

[17] The Court presumes without finding as a matter of fact that MDOC and MCC accept federal funds. MDOC Defendants have not argued otherwise here.

[18] In MDOC Defendants' Motion to Dismiss, they also argue that Plaintiff lacks standing to bring an ADA claim. (Doc. 187 at 11-12). MDOC Defendants essentially argue that because the medical records show that Plaintiff only required one hearing aid, he has no standing to bring the ADA claim as MDOC's policy did not result in any injury. MDOC Defendants also argue that Plaintiff lacks standing because any change to MDOC policy may not necessarily result in Plaintiff receiving a second hearing aid. "The standing inquiry is not . . . an assessment of the merits of a

hearing impairment" but "chose to take only one hearing aid." (Doc. 197 at 13-14; Doc. 196 at ¶ 4(g)). As discussed above, there is a genuine dispute of material fact on this issue. Plaintiff responded that he "did not refuse a hearing aid for his left ear" (Doc. 220-3 at 2) and this response is consistent with the Corizon SUMF. (Doc. 201 at ¶ 78(c) ("[Plaintiff] claimed that his hearing test was flawed but stated he was willing to accept his new hearing aids.")).

MDOC Defendants also argue that MDOC Policy D5-5 complies with the ADA because 28 C.F.R. § 35.160 only requires "necessary" or "reasonable" means to accommodate people with disabilities. The Eighth Circuit has clearly held that the ADA and Rehabilitation Act require that individuals receive "meaningful access" to programs and activities and not merely "limited participation." *Randolph*, 170 F.3d at 858. "Depending on the circumstances, this may require the use of 'auxiliary aids and services,' such as interpreters for the hearing impaired." *Loye v. Cty. of Dakota*, 625 F.3d 494, 496 (8th Cir. 2010) (quoting *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009)).

MDOC Policy D5-5.1 provides that "[i]f an offender is deaf in both ears and the offender does not have a personal hearing aid, the medical unit will issue 1 hearing aid if medically necessary." (Doc. 196-4 at 5). On its face, this policy flatly denies reasonable accommodations to individuals who require two hearing aids. When Corizon denied Plaintiff a second hearing aid, Defendant Wilhite explicitly stated that it was "Corizon policy to only provide one hearing aid." (Doc. 201 at ¶ 35). In an affidavit before this Court, Defendant Wilhite has clarified that the statement as to Corizon policy was "inaccurate" and "[a]s an exception to MDOC Policy D5-5.1, an offender can be provided with a hearing aid for each ear when it is deemed that the use of a

---

plaintiff's claim." *Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1011 (8th Cir. 2018) (quoting *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012)). The Court believes MDOC Defendants are confusing standing with the merits.

second hearing aid would be beneficial at that time." (Doc. 208-1 at ¶¶ 11-12). A policy which only provides deaf individuals with two hearing aids as an "exception" may not sufficiently accommodate the needs of individuals with disabilities.

While these particular arguments are unpersuasive, Plaintiff cannot establish a claim under the ADA or Rehabilitation Act for three reasons. First, claims under the ADA and Rehabilitation Act "cannot be based on medical treatment decisions." *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam). The Court notes, however, that "[c]laims of inadequate medical treatment for a disability are distinguishable from claims that a prisoner was denied access to medical services because of his disability." *Postawko v. Missouri Dep't of Corr.*, No. 2:16-CV-4219-NKL, 2017 WL 1968317, at *13 (W.D. Mo. May 11, 2017); *see also Rogers v. Missouri Dep't of Corr.*, No. 11-4088-CV-C-NKL, 2011 WL 13051907 (W.D. Mo. Aug. 2, 2011) (distinguishing medical treatment decisions from prison policy).

MDOC Defendants properly argue that they relied on the judgment of medical professionals, the Corizon Defendants, in determining that Plaintiff did not require a second hearing aid. *See Darby v. Los Angeles Cty. Sheriff Dep't*, No. CV 16-08711-CAS (JDE), 2018 WL 6131577, at *10 (C.D. Cal. Jan. 22, 2018) ("To the extent Plaintiff alleges that [Defendant] denied him proper medical care designed to treat his hearing impairment, such claims are not cognizable under the ADA."). In an affidavit before this Court, Defendant Pogue explains that she "believed [Plaintiff] received adequate medical treatment for his hearing impairment according to the department's policies." (Doc. 196-3 at ¶ 8). Though this Court finds MDOC's hearing aid policy problematic, it cannot impose liability under the ADA or Rehabilitation Act for the medical treatment decision not to provide a second hearing aid.

Second, Plaintiff argues that the refusal to provide a second hearing aid "denied [him] the ability to participate in programs, services and activities due to inability to hear and communicate

effectively." (Doc. 69 at ¶ 188). While Plaintiff presumably sought to mimic the ADA with this language, *see* 42 U.S.C. § 12132, such generic averments are not sufficient to establish a genuine issue of material fact. Plaintiff fails to specifically identify in his SAP any program, service, or activity he was unable to access. The closest Plaintiff comes to referencing a specific program, service or activity is his allegation that he cannot "communicate effectively," but this does not establish a claim under the ADA. (Doc. 69 at ¶ 188); *see Irby v. Sumnicht*, 683 F. Supp. 2d 913, 916 (W.D. Wis. 2010) (holding that conversation is not covered by ADA because it is not created or provided by the prison). Plaintiff cannot avoid summary judgment on his ADA claim because he has not brought forward specific facts demonstrating he was denied access to programs, services, or activities. *See Rigler v. Lampert*, 284 F. Supp. 3d 1224, 1246 (D. Wyo. 2017) ("[Plaintiff] cites no benefits or services provided by the Department of Corrections to other inmates which he has been denied because of his hearing limitations or specific programs he was not allowed to participate in due to his hearing problems.").

Finally, the Court finds that Plaintiff cannot succeed in his claim under the ADA because it appears that he retained access to his (partially damaged) second hearing aid during the relevant period. Plaintiff states that he was "forced to use his personal hearing aid which still worked but was very fragile." (Doc. 256 at 50). Indeed, Plaintiff admits he "did not suffer any harm" from denial of the second hearing aid but expresses concern that he is "exposed to potential future harm." (*Id.*). *See Tabb v. Quinn*, No. C06-5111 RBL/KLS, 2007 WL 1430104, at *7 (W.D. Wash. May 11, 2007) ("In fact, Plaintiff never alleged any harm resulting from his moderate hearing impairment."). Given Plaintiff retained a second hearing aid, he cannot plausibly establish that he was denied access to programs or services.

This Court finds that Plaintiff has not brought forth specific facts showing there is a genuine issue for trial as to his ADA and Rehabilitation Act claims. Plaintiff's failure to meet his legal

burden, however, should not be treated as an endorsement of MDOC Policy D5-5.1, which provides that "[i]f an offender is deaf in both ears and the offender does not have a personal hearing aid, the medical unit will issue 1 hearing aid if medically necessary." (Doc. 196-4 at 5). This policy appears to be extremely ill-advised.

### (4) Missouri State Law Claims[19]

Under Missouri law, the Director of the MDOC "shall establish an offender grievance procedure" and the Chief Administrative Officer ("CAO") of each correctional center "shall observe these rules and procedures at all times." Mo. Rev. Stat. § 217.370. Missouri law also provides that the Director "shall arrange for necessary health care services for offenders confined in correctional centers." Mo. Rev. Stat. § 217.230. Plaintiff argues that "neither the CAO nor his assistant wardens followed or observed the grievance procedures concerning ADA violation issues." (Doc. 69 at ¶ 185).[20] Plaintiff also generally alleges that MDOC Defendants "enacted policy inconsistent with state . . . statutes." (*Id.* at ¶ 197).

The discretion to establish and enforce grievance procedures is "vested solely in the Director of the Department of Corrections and the Chief Administrative Officer of each correctional facility." *Thomas v. Denney*, 453 S.W.3d 325, 330 (Mo. App. 2014). Missouri law clearly provides that a court "shall not substitute its discretion for discretion legally vested" in an administrative officer or body. Mo. Rev. Stat. § 536.150.1. The Missouri Supreme Court has

---

[19] Though the parties do not discuss this issue, the Court notes that it can exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

[20] Plaintiff also cites Mo. Rev. Stat. § 217.225(4) for the proposition that the CAO "shall be liable to like penalties and punishment for any neglect or violation of duty." This particular statute, however, applies only when federal prisoners are being held in state custody, and the Court finds the CAO cannot be held liable under the statute regardless for the reasons discussed herein.

Plaintiff also cites Mo. Rev. Stat. § 476.750, which concerns auxiliary aids and services within the Missouri court system and is inapplicable here.

specifically cautioned that the MDOC is "under the control and responsibility of the executive branch of government, not the judicial branch, and that courts will not interfere with the conduct, management, and disciplinary control of this type of institution except in extreme cases." *McIntosh v. Haynes*, 545 S.W.2d 647, 652-53 (Mo. banc 1977). Plaintiff cites no precedent, and this Court is aware of none, suggesting that discretionary decisions regarding prisoner grievances are actionable under Missouri law. Nor is this Court persuaded that MDOC has generally failed to arrange for necessary health services. Therefore, summary judgment in favor of MDOC Defendants on Plaintiff's state law claims will be granted.

## IV.   CONCLUSION

Plaintiff has alleged that numerous individuals and entities were deliberately indifferent to his serious medical needs. Deliberate indifference requires more than gross negligence; the alleged violation must be "objectively and sufficiently serious" and the defendant must have acted with a "sufficiently culpable state of mind." *Kulkay v. Roy*, 847 F.3d 637, 642-43 (8th Cir. 2017) (citations omitted). The record before this Court reflects that Corizon Defendants provided Plaintiff substantial medical care, tried numerous treatment options, made referrals for visits to specialists, ordered diagnostic testing when indicated, and generally used their best efforts to address Plaintiff's serious medical needs. While certain individual treatment decisions could arguably rise to the level of medical malpractice, a reasonable factfinder could not conclude that any Corizon Defendant was deliberately indifferent to Plaintiff's serious medical needs. As a result, one could also not conclude that MDOC Defendants tacitly authorized any deliberate indifference by the Corizon Defendants. Plaintiff's remaining claims fail as a matter of law for the reasons discussed above.

Accordingly,

**IT IS HEREBY ORDERED** that the MDOC Defendants' Motion for Summary Judgment (Doc. 194) is **GRANTED.**

**IT IS FURTHER ORDERED** that Corizon Defendants' Motion for Summary Judgment (Doc. 199) is **GRANTED.**

A separate Order of Judgment will accompany this Memorandum and Order.

Dated this 9th day of February, 2021.

                              JOHN A. ROSS
                                  UNITED STATES DISTRICT JUDGE